Lynette Michelle Voss HUFFSTUTLAR, Relator,

v.

The Honorable Don KOONS, Judge, 255th Judicial District Court of Dallas County, Texas, Respondent.

No. 05–89–01482–CV.

Court of Appeals of Texas, Dallas.

May 31, 1990.

Roger A. Hansen, Elliott, Churchill & Hansen, Dallas, for relator.

Sam L. Lewis, Dallas, for respondent.

## OPINION

WHITHAM, Justice.

Lynette Michelle Voss Huffstutlar seeks a writ of mandamus to compel the Honorable Don Koons, Judge of the 255th Judicial District Court of Dallas County, Texas, to grant her application for writ of habeas corpus and thereby return her child to her. Lynette argues that the 1987 order giving custody of the child to her former husband, Larry Voss, is void and that she is entitled to possession of the child under the 1982 divorce decree which named her managing conservator of the child. Because we conclude that the 1987 order is void, we conditionally grant the writ.

## THE FACTS

Lynette and Larry were divorced in the 255th Judicial District Court in 1982. The divorce decree named Lynette managing conservator of one-year-old Kimberly. Shortly thereafter, Lynette and Kimberly moved to Oklahoma where they resided until 1986. According to Lynette, Larry came to Oklahoma on September 26, 1986, and abducted Kimberly. According to Larry, Lynette called him and asked him to take Kimberly because Lynette did not want her any more. On October 8, 1986, Larry filed in the 255th District Court a motion to modify custody, seeking to be named managing conservator. On that same day, Lynette filed child-stealing charges against Larry in Oklahoma; those charges were later dropped.

On October 15, 1986, Lynette received a letter informing her there would be a hearing on the motion to modify on October 16. Lynette appeared at the October 16 hearing, which was conducted by a family court master. Lynette alleges that nothing happened at the hearing; the master's findings show that the parties agreed to a continuance pending a home study of both homes. The master told Lynette that Kimberly was to stay with Larry, and that he would inform her of any further hearings. On December 23, 1986, Lynette took Kimberly back to Oklahoma; she testified at the habeas corpus hearing that since she had heard nothing further from the court concerning the motion to modify, she thought it was all over and she was allowed to take Kimberly. She later moved to Arizona, taking Kimberly with her, without telling Larry where they had gone.

On December 24, 1986, the trial court held a hearing concerning the motion to modify; according to Lynette, the hearing was unscheduled and occurred without notice to her. Lynette did not appear at the hearing. Judge Koons entered an order on January 5, 1987, modifying custody and naming Larry managing conservator. On March 14, 1989, Lynette was arrested in Arizona on a fugitive warrant for interfering with a child custody order. Lynette was returned to Texas and faces pending criminal charges in the 282nd Judicial District Court. Kimberly was returned to Larry. On August 9, 1989, Lynette filed in the 255th Court an application for writ of habeas corpus to recover possession of Kimberly. After a hearing, the trial court denied Lynette's application for writ of habeas corpus. Lynette seeks this writ of mandamus to compel the trial court to grant her application for writ of habeas corpus.

## MANDAMUS AS APPROPRIATE REMEDY

■ Mandamus issues to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no adequate remedy on appeal. *Johnson v.*

*Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985). Section 14.10 of the Texas Family Code provides in pertinent part: "[I]f the right to possession of a child is presently governed by a court order, the court in a habeas corpus proceeding involving the right to possession of the child shall compel return of the child to the relator if and only if it finds that the relator is presently entitled to possession by virtue of the court order." TEX.FAM. CODE ANN. § 14.10(a) (Vernon 1986). The writ of habeas corpus should be granted when the relator shows that he or she is entitled to custody of the child by virtue of a valid and existing court order; the relator is entitled to an issuance of the writ immediately upon a showing of his or her right to custody. *Saucier v. Pena,* 559 S.W.2d 654, 655 (Tex.1977). There is no right to appeal from the denial of a writ of habeas corpus because the denial is not an appealable order. *Gray v. Rankin,* 594 S.W.2d 409, 409 (Tex.1980); *Nydegger v. Breig,* 740 S.W.2d 551, 552 (Tex.App.—San Antonio 1987, no writ). Thus, mandamus is the proper remedy to compel enforcement of a relator's right to possession of a child. *Saucier,* 559 S.W.2d at 656; *Lamphere v. Chrisman,* 554 S.W.2d 935, 938 (Tex.1977).

Lynette argues that the trial court was required to compel return of Kimberly to her because she is presently entitled to possession by virtue of the 1982 divorce decree. She contends that the 1987 order of modification is wholly void and that the only valid existing order, the 1982 divorce decree, entitles her to possession of the child. She argues that the 1987 order is void for three reasons: 1) the trial court lacked subject-matter jurisdiction; 2) the trial court lacked personal jurisdiction over her; and 3) her due process rights were violated because the order issued without notice to her. Lynette contends that the trial court, in failing to compel the return of her child, violated a duty imposed by law, for which she has no adequate remedy. We conclude that this mandamus proceeding is the appropriate vehicle for complaining of the trial court's denial of the writ of habeas corpus. We conclude further that the trial court lacked subject matter jurisdiction. Therefore, we need not address Lynette's second and third arguments that the 1987 order is void.

### Subject Matter Jurisdiction

■ Before proceeding to the merits of subject matter jurisdiction, we note the rule that when a judgment is attacked collaterally, extrinsic evidence may not be used to establish a lack of jurisdiction. *See Crawford v. McDonald,* 88 Tex. 626, 631, 33 S.W. 325, 332 (1895); *Fender v. Moss,* 696 S.W.2d 410, 412 (Tex.App.—Dallas 1985, writ ref'd n.r.e.), and that recitations in the judgment control the rest of the record, so that even though other parts of the record show a lack of jurisdiction, if the judgment recites the contrary, the collateral attack fails. *See Pure Oil Co. v. Reece,* 124 Tex. 476, 481, 78 S.W.2d 932, 934–35 (Tex.Comm'n App.1935, opinion adopted). This rule, however, does not control in the present case. Instead, the present case is controlled by the rule that when the recitations of the judgment on a particular subject are insufficient affirmatively to show jurisdiction, *so long as they do not show affirmatively a lack of jurisdiction,* the usual presumption in favor of the judgment prevails. *See State Mortgage Corp.,* 120 Tex. 148, 150–51, 36 S.W.2d 440, 441 (1931); *Dowdle v. United States Fid. & Guar. Co.,* 255 S.W. 388, 389 (Tex.Comm'n App.1923, holding approved). This latter statement and these authorities control since the recitations in the challenged judgment *affirmatively show a lack of jurisdiction.* We conclude that this affirmative showing of lack of jurisdiction appears from the matters discussed below.

■ The trial court's order states "[t]his state is the home state of the child the subject of this suit." To reach this conclusion, the trial court states the following as support:

The Court finds that, although the child had been living with the Respondent in the State of Oklahoma for a period of time, that such residence was terminated by the Respondent by voluntarily delivering the child to the Movant for the pur-

pose of returning and having residence in Dallas County, State of Texas, and under the jurisdiction of this Court as being the Court of original jurisdiction.

\* \* \* \* \* \*

That the State of Texas, through the voluntary abandonment of any home state qualification for said child, *has become the home state of said child* the subject of this suit.

(Emphasis added.) Thus, the trial court bases its determination that Texas is Kimberly's home state upon a "voluntary abandonment of any home state qualification" for Kimberly. Such is *not* a proper basis for the determination of a home state under Texas law. "Home state" is defined in the Texas Family Code as follows:

"Home state" means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as a parent, for at least six consecutive months, and in the case of a child less than six months old, the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.

TEX.FAM. CODE ANN. § 11.52(5) (Vernon 1986); *see also* UNIF. CHILD CUSTODY JURISDICTION ACT § 2, 9 U.L.A. 123, 133 (1988). Nowhere in the applicable portions of the Family Code does there appear any basis for determining "home state" by virtue of "abandonment of a prior 'home state.'" Thus, the 1987 order shows affirmatively on its face a lack of jurisdiction. It cannot be disputed that Kimberly had established a "home state" in Oklahoma prior to the institution of the underlying lawsuit. Likewise, it cannot be disputed that Kimberly did not meet the provisions of section 11.-52(5) with regard to the State of Texas. Therefore, the State of Texas cannot, as a matter of law, be Kimberly's "home state" for the purposes of section 11.53(a)(1) of the Texas Family Code granting a basis for the assertion of jurisdiction by a Texas court. *See Ex parte McDonald*, 737 S.W.2d 102, 104 (Tex.App.—Corpus Christi 1987). In light of this, we conclude that

the trial court's order which is the subject of this proceeding is void on its face, being entered by a court without basis to assert subject matter jurisdiction. *See State Mortgage Corp.*, 120 Tex. at 150–51, 36 S.W.2d at 441.

■ For the above reasons, we conclude that the recitations in the challenged 1987 order affirmatively show a lack of jurisdiction. Thus, we conclude that Lynette is not prohibited from attacking the 1987 order. We turn, therefore, to address the merits of Lynette's lack of subject matter jurisdiction argument. Continuing jurisdiction in the Texas courts over proceedings affecting the parent-child relationship is provided for in section 11.05 of the Family Code. TEX.FAM. CODE ANN. § 11.05(g) (Vernon 1986). Subsection (g) of that section of the Family Code provides the basis for exercising continuing jurisdiction in the present case. *See Hutchings v. Biery*, 723 S.W.2d 347, 349 (Tex.App.—San Antonio 1987, no writ). Section 11.05(g) provides:

*Except as provided by Subsection (d) of Section 11.53 of this code*, a court may exercise its continuing, exclusive jurisdiction to modify all aspects of its decree, including managing conservatorship, possessory conservatorship, possession of and access to the child and support of the child. A court of this state may not exercise its continuing jurisdiction to modify any part of a decree if the child and all parties have established and continue to maintain their principal residence or home state outside this state. This subsection does not affect the power of the court to enforce and enter a judgment on its decree.

(Emphasis added.) Hence, we reach consideration of section 11.53 of the Texas Family Code. We quote section 11.53 in its entirety:

(a) A court of this state that is competent to decide child custody matters has jurisdiction to make a child custody determination by initial decree or modification decree or order if:

(1) this state:

(A) is the home state of the child on the date of the commencement of the proceeding; or

(B) had been the child's home state within six months before the date of the commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;

(2) it appears that no other state would have jurisdiction under Subdivision (1) of Subsection (a) of this section and it is in the best interest of the child that a court of this state assume jurisdiction because:

(A) the child and his parents or the child and at least one contestant have a significant connection with this state other than mere physical presence in this state; and

(B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(3) the child is physically present in this state and:

(A) the child has been abandoned; or

(B) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or there is a serious and immediate question concerning the welfare of the child; or

(4) it is in the best interest of the child that this court assume jurisdiction and;

(A) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with Subdivision (1), (2), or (3) of this subsection; or

(B) another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child.

(b) Except under Subdivisions (3) and (4) of Subsection (a) of this section, physical presence in this state of the child or of the child and one of the contestants is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

(c) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.

(d) Except on written agreement of all the parties, a court may not exercise its continuing jurisdiction to modify custody if the child and the party with custody have established another home state unless the action to modify was filed before the new home state was acquired.

In the present case, we need also to keep before us the definition of "home state" given in the Family Code:

"Home state" means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as a parent, for at least six consecutive months, and in the case of a child less than six months old, the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.

TEX.FAM. CODE ANN. § 11.52(5). It is undisputed that, under the facts of the present case, Texas cannot be the "home state." The State of Texas fails to meet the definition of "home state" because Kimberly lived in Texas less than six months before Larry filed the motion to modify. Therefore, a state other than the State of Texas was Kimberly's "home state" at the time Larry filed the motion to modify. This issue—that the State of Texas was not Kimberly's "home state" at the time Larry filed the motion to modify—becomes crucial in analyzing the disposition of this application for writ of mandamus.

Although the State of Texas was not Kimberly's "home state," nevertheless, we can identify Kimberly's "home state." It was the State of Oklahoma. Indeed, Kimberly and her mother, Lynette, were back in the State of Oklahoma at the time of the

hearing on Larry's motion to modify. The trial court held the hearing on December 24, 1986. Lynette took Kimberly back to Oklahoma the day before—December 23, 1986. In this court Larry does not challenge her right to do so. Furthermore, the fact that Kimberly was in the State of Texas between the period on or about September 26, 1986, to December 23, 1986, is of no moment. The code provision defining "home state" tells us that "[p]eriods of temporary absence of [Kimberly] are counted as part of the six-month or other period." Furthermore, it cannot be said that Lynette abandoned Kimberly on September 26, 1986, when Larry took Kimberly from Oklahoma to Texas. While the Family Code does not define abandonment, nevertheless the first three grounds for involuntary termination of the parent-child relationship provide guidance. A parent abandons a child so as to justify termination if the parent (1) voluntarily left the child alone or in the possession of another *not the parent* and expressed an intent not to return; or (2) voluntarily left the child alone or in the possession of another *not the parent* without expressing an intent to return, without providing for the adequate support of the child, and remained away for a period of at least three months; or (3) voluntarily left the child alone or in the possession of another *without providing adequate support* of the child and remained away for a period of *at least six months.* TEX.FAM. CODE ANN. § 15.02(1)(A), (B) & (C) (Vernon 1986) (emphasis added). The record reflects, however, Larry's testimony that Lynette abandoned Kimberly by telephoning him and asking him to take Kimberly because she did not want Kimberly any more. For the purposes of this opinion, we assume, but do not decide, that Lynette made such a request. Nevertheless, that request does not constitute abandonment. Lynette never "left the child alone, ... express[ing] an intent not to return"; Lynette never left the child in the possession of "another not the parent"; Lynette never left the child alone or in the possession of another "without providing adequate support of the child" and Lynette never "left the child ...

for a period of at least six months." Certainly, Larry cannot be heard to say that leaving Kimberly with him amounts to failing to provide for adequate support for Kimberly. Therefore, "abandonment" can provide no basis for subject matter jurisdiction under section 11.53. Finally, Larry never met the six months requirement of section 11.52(5) necessary to establish the State of Texas as Kimberly's "home state." Consequently, at the time of the hearing on Larry's motion to modify, the State of Oklahoma was Kimberly's "home state." It follows that Larry cannot escape the "another home state" prohibition of jurisdiction contained in section 11.53(d) as discussed below.

Examination of section 11.53 reveals a statute containing four equal subparagraphs designated (a), (b), (c) and (d). We focus on subparagraphs (a) and (d). Subparagraph (a) provides that "[a] court of this state that is competent to decide child custody matters has jurisdiction to make a child custody determination by ... modification decree or order if: ...." Thus, subparagraph (a) may be described as a grant of judicial authority to act to arrive at a modification decree. We conclude that we must not disregard the provisions of subparagraph (d) of section 11.53. We reach this conclusion because subparagraph (d) renders subparagraph (a) inapplicable in the present case.

██ Subparagraph (a) is inapplicable because subparagraph (d) may be described as a "withdrawal" of judicial authority to act to arrive at a modification decree. We reach this conclusion in light of the language of subparagraph (d). Consider again the language of subparagraph (d):

> Except on written agreement of all the parties, a court may not exercise its continuing jurisdiction to modify custody if the child and the party with custody have established another home state unless the action to modify was filed before the new home state was acquired.

Remember, in the present case the trial court seeks to exercise continuing jurisdiction under subparagraph (a). Remember also these two prohibiting circumstances:

(1) that another "home state" has been established; and (2) that the action to modify was filed *after* the new "home state" was acquired. Hence, we reach the "withdrawal" of judicial authority impact of subparagraph (d); to wit: the trial court may not exercise its continuing jurisdiction to modify custody if these two prohibiting circumstances are present, except on written agreement of all the parties. It is undisputed that this exception is not met in the present case. There is no such written agreement.

It follows, therefore, that the trial court was not authorized to exercise its continuing jurisdiction to modify custody in the present case. Except on written agreement of all the parties, a court may not exercise its continuing jurisdiction to modify *custody* if the child and the party with custody have established another home state unless the action to modify was filed before the new home state was acquired. *Hutchings*, 723 S.W.2d at 349 (emphasis in original). Section 11.53(d) prohibits the Texas courts from exercising continuing jurisdiction to modify "custody" after the child and the party with custody have established a new home state. "Custody" refers to the managing conservatorship of a child. *Hutchings*, 723 S.W.2d at 349 (citing TEX.FAM. CODE ANN. § 11.52[10] [Vernon 1986]). The jurisdiction of a Texas court to determine custody in either an original custody proceeding or by modification of a prior decree is controlled by section 11.53 of our Family Code. Under section 11.53(d), a Texas court may not, except by written agreement of the parties, exercise its continuing jurisdiction to modify a prior custody decree if the child and the party with custody have established another home state unless the action to modify was filed before the new home state was acquired. *Grimes v. Grimes*, 706 S.W.2d 340, 341 (Tex.App.—San Antonio 1986, writ dism'd) (footnote omitted). We conclude, therefore, the trial court lacked subject matter jurisdiction in the present case. Thus, we conclude that the 1987 order is void. Consequently, we conditionally grant writ of mandamus commanding the Honorable Don D. Koons, Judge, 255th District Court, to grant Lynette's writ of habeas corpus seeking the return to her of her child Kimberly. We are confident that Judge Koons shall comply with our order, but, if he does not, the writ shall issue.

ENOCH, C.J., and KINKEADE and WHITTINGTON, JJ., would deny the writ without opinion.