In the Interest of Joshua Tams WILSON and Rachel Lyn Wilson.

Tams WILSON, Appellant,

v.

Teri Chase TOLER, Appellee.

No. 12–89–00079–CV.

Court of Appeals of Texas, Tyler.

Nov. 16, 1990.

Rob Foster, Longview, for appellant.

Don E. Williams, Longview, for appellee.

COLLEY, Justice.

This is a child custody dispute between the natural parents of Joshua Tams Wilson and Rachel Lyn Wilson, minors, controlled by the provisions of the Texas version of the Uniform Child Custody Jurisdiction Act (UCCJA), Tex.Fam.Code Ann. §§ 11.51–11.-75 (Vernon 1986).[1]

The record shows that the marriage of appellant Tams Wilson and his former wife, appellee Teri Chase Toler, was dissolved by a decree of divorce signed and rendered on November 25, 1986, by the District Court of McCurtain County, Oklahoma. Under the terms of that decree, appellant was awarded the care and custody of the two children named above. Following the divorce, appellee moved to Longview, Texas, where she remarried. Subsequently, appellee filed a motion in the District Court of Gregg County, Texas, to modify the Oklahoma decree. She petitioned for appointment as managing conservator of both children. Following a protracted hearing, the

---

1. All references to sections in this opinion are to the UCCJA unless otherwise noted.

Texas court denied appellant's petition for writ of habeas corpus to enforce the Oklahoma decree, overruled appellant's plea challenging the jurisdiction of the Texas court of the custody issue, and granted appellee's motion to modify. We will reverse and dismiss appellee's amended motion to modify and remand the cause with instructions.

Appellant argues five points of error, asserting that the trial court erred in granting the motion to modify because (1) the court had no jurisdiction under the UCCJA, (2) there is no evidence that appellant "voluntarily relinquished possession of the children for a 12–month period," (3) there are no pleadings of a "material change in [the children's] circumstances," or that retention of "appellant as primary custodian" would be "injurious" to the children, or that appointment of appellee as managing conservator would be a "positive improvement" for the children. Appellant further alleges by his points of error that the trial court committed reversible error in overruling his motion for continuance and denying his right to a jury trial.

Because we conclude that the Texas court had no jurisdiction to modify the Oklahoma decree, we will sustain appellant's first point of error, and therefore will not address the merits of appellant's remaining points of error.

■ Our review of the pertinent portions of the UCCJA persuades us that the trial court had no jurisdiction to modify the Oklahoma decree. The undisputed facts show that Oklahoma was, at the time of the filing of appellee's amended motion to modify, the home state of both children, and that the State of Texas was not, and has never been, the children's home state under the UCCJA. Therefore, the Texas court had no jurisdiction under sections 11.53(a)(1) or 11.53(a)(2).

■ The Texas court also lacked jurisdiction under section 11.53(a)(3) because there is no evidence that either of the children had "been abandoned" or that an "emergency" existed, i.e., there is no evidence

that the children had been neglected, subjected to, or threatened with "mistreatment or abuse ...[,]" or that "a serious and immediate question [existed] concerning the welfare of the [children]." See *McElreath v. Stewart*, 545 S.W.2d 955, 958 (Tex. 1977).

■ The Texas court had no jurisdiction under section 11.53(a)(4)(A) for the same reason that it has no jurisdiction under section 11.53(a)(2). We also conclude that the Texas court had no jurisdiction of the custody issue under section 11.53(a)(4)(B) because Oklahoma was the home state, and because the record demonstrates that the Oklahoma court did not "decline to exercise jurisdiction" in the manner required by the Oklahoma [2] and Texas versions of the Uniform Child Custody Jurisdiction Act.

The Okla.Stat.Ann. tit. 10, ch. 52, § 1609 A, provides that the Oklahoma court having jurisdiction under UCCJA "may decline to exercise its jurisdiction *any time before making a decree if it finds that it is an inconvenient forum ... under the circumstances of the case* and that a court of another state is a more appropriate forum." (Emphasis ours.) Section 1609 B provides that "the court's finding ... may be made upon the court's own motion...." Section 1609 C recites that the court in making that determination may take into account:

1. If another state is or recently was the child's home state;

2. If another state has a ***closer connection*** with the child and his family or with the child and one or more of the contestants;

3. If substantial evidence concerning the child's present or future care, protection, training and personal relationships is more readily available in another state;

4. If the parties have agreed on another forum which is no less appropriate; and

5. If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in section 2 of this Act. (Emphasis ours.)

**2.** We judicially note the Oklahoma statute.

Sections 1609 D and E of the Oklahoma statute read:

D. Before determining whether to decline *or retain* jurisdiction, the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties.

E. *If the court finds* that it is an inconvenient forum and that a court of another state is a more appropriate forum, *it may dismiss the proceedings, or it may stay the proceedings* upon conditions that a custody proceeding be promptly commenced in another named state....

Section 1609 H of the Oklahoma statute reads:

H. Upon dismissal or stay of proceedings, under this section the court shall inform the court found to be the more appropriate forum of this fact or, if the court which would have jurisdiction in the other state is not certainly known, shall transmit the information to ... [the] appropriate official for forwarding to the appropriate court. (Emphasis ours.)

Under section 1623 of the Oklahoma statute, the Oklahoma court, upon request by a court of another state, "shall forward to the other court certified copies of ... all ... documents."

It is clear that the Oklahoma statute contemplates that the Oklahoma court may decline to exercise its jurisdiction of child custody issues only after having heard the evidence in an actual custody proceeding before it. In so doing, the court, guided by the factors found in section 1609 C, should make the findings necessary to provide the basis for its dismissal or stay of its own proceedings. Indeed, the Oklahoma statute, section 1609 E, provides that the Oklahoma court may stay its proceedings after its independent determination that the court of another state is a "more appropriate forum" and may order the movant in

the case to commence a custody proceeding in another state.

The record before us reveals that the trial judge contacted the judge of the Oklahoma court, whereupon that judge, with no custody proceedings pending in his court, agreed with the trial judge to "yield [the Oklahoma court's] jurisdiction ... to the state of Texas." The Oklahoma judge dictated over the telephone to the court reporter of the trial court an "order" [3] to accomplish the declination of jurisdiction.

As the reader may easily observe, the "order," dictated by the Oklahoma court and introduced by the trial judge, is unsigned and uncertified. Moreover, no custody proceeding was pending in the Oklahoma court, but the Oklahoma court caused all pleadings and orders filed in the Texas proceeding to be filed in the Oklahoma court. It is apparent that the so-called findings made by the Oklahoma judge were based solely on his telephone conversations with the trial judge to which neither appellant nor appellee was privy. In short, the order of declination of jurisdiction over the dispute by the Oklahoma court judge and his "findings" amount to nothing more than an agreement between judges, unsupported by any real evidence submitted during the course of a custody proceeding in the Oklahoma court. Additionally, the trial judge's actions in modifying the Oklahoma decree, based on the Oklahoma "order," violated the plain language of section 11.54 that "reasonable notice and opportunity to be heard must be given to the contestants ...[,]" as well as state and federal due process rights.

We thus conclude under both the Texas and Oklahoma versions of the UCCJA that the "order" of the Oklahoma court declining to exercise jurisdiction which was never properly invoked by a custody proceeding is void. The Texas court was without jurisdiction to hear and determine appellee's motion to modify the Oklahoma decree. Appellant's first point of error is sustained.

3. A copy of that "order" is attached to this opinion as Appendix "A."

The judgment is reversed, appellee's amended motion to modify the Oklahoma decree is dismissed, and the cause is remanded to the trial court in order that the judge thereof may reconsider appellant's petition for habeas corpus pursuant to section 14.10.

APPENDIX A

ORDER

Now on this the 26th day of October, 1988, the Court having received all pleadings and orders filed in the above styled cause, and having visited by telephone with Judge Wm. C. Martin, III, of the 307th District Court of the State of Texas, finds:

1. That the children and the Defendant have significant connections to the State of Texas.

2. That the children are physically present in the State of Texas.

3. Due to the above findings, there is evidence in the State of Texas, substantial evidence concerning the children's past, present and future care particularly training and personal relationships.

4. That this state is an inconvenient forum when compared to the State of Texas.

It is therefore Ordered, Adjudged and Decreed that this Court yields it's jurisdiction over this case to the State of Texas. Accordingly this Court will recognize any order of the Texas court and will fully and completely cooperate with any such order that issues from that State.

It is therefore Ordered that the application for Habeas Corpus and Motion to Modify is overruled.

John A. Benson

Judge of the District Court