Patricia ABDERHOLDEN, Appellant,

v.

Timothy Scott MORIZOT, Appellee.

No. 3–91–514–CV.

Court of Appeals of Texas,
Austin.

June 30, 1993.

Rehearing Overruled Aug. 11, 1993.

Craig A. Morgan, Brown McCarroll and Oaks Hartline, Austin, for appellant.

Claude E. Ducloux, Jennifer Tull, Boozer & Tull, Austin, for appellee.

Before POWERS, ABOUSSIE and B.A. SMITH, JJ.

PER CURIAM.

This is a child-custody dispute. Pursuant to Texas Family Code § 11.53(a)(3)(B), the district court issued an order modifying the child's managing conservatorship. This appeal requires us to address the apparent conflict between section 11.53(a)(3)(B) and Texas Family Code § 11.53(d) and determine whether the trial court had authority to render an order permanently modifying custody. We will reverse.

## BACKGROUND

### 1. Factual Background

Appellee Timothy Scott Morizot (Morizot) and appellant Patricia Abderholden (Abderholden) were divorced on August 8, 1988, in the district court of Travis County. Abderholden was appointed managing conservator of their son, Alan David Morizot (Alan), then almost four years old. Morizot was appointed possessory conservator. Abderholden and Alan lived in Marshall, Arkansas, at the time of the divorce and have continued to reside there. Morizot resides in Travis County.

In the summer of 1989, Morizot became concerned about Alan's behavior during his six-week visit in Texas. Morizot took Alan to Charter Lane Hospital for a psychological evaluation. Dr. Byram Barnes, the evaluating psychologist, diagnosed Alan as suffering from a post-traumatic stress disorder. Dr. Barnes sent his report to the Department of Human Services in Arkansas. Morizot returned Alan to Abderholden at the end of the visitation period and did not see him again until the next scheduled visit in Arkansas at Christmas.

Morizot was again concerned about Alan during his Christmas visit. On December 29th, Morizot took Alan to the Ozark Counseling Services for an emergency interview. The next day, Morizot decided to take Alan to Texas. Once in Texas, Morizot telephoned Abderholden to tell her Alan's whereabouts. On January 2nd, Morizot contacted an attorney who prepared a motion to modify custody and request for a

temporary restraining order (TRO) to prevent Abderholden from recovering Alan. Morizot also went to Charter Lane hospital in an attempt to have Dr. Byram Barnes see Alan. On January 3, 1990, Morizot was arrested in Austin on charges of interference with child custody. Abderholden drove to Austin to recover Alan and upon her arrival, learned that a hearing on Morizot's petition for a TRO was scheduled the next day in the Travis County district court.

## 2. Procedural Background

At the TRO[1] hearing on January 4th, Morizot sought authority to place Alan into in-patient treatment at Charter Lane Hospital and Abderholden voluntarily agreed to admit Alan to the hospital and to participate in the treatment process. The trial court announced from the bench that it would issue an injunction placing Alan in a parental institute and restricting both parents from removing him until a doctor released him. The record, however, does not include a signed order granting the request for injunctive relief.

On January 9, 1990, Morizot filed a "Motion To Modify In Suit Affecting The Parent–Child Relationship And Motion For Immediate Temporary Orders" ("the motion to modify"). In the motion to modify, Morizot prayed for a temporary restraining order, temporary and permanent orders removing Abderholden as Alan's managing conservator and appointing Morizot managing conservator, and changes in support and visitation.

On February 8, 1990, Abderholden filed a plea to the jurisdiction, original answer, and application for writ of habeas corpus. On February 27th and 28th, a hearing was held on Abderholden's plea and application, and on Morizot's motion for psychological evaluation.

In an order signed March 2, 1990, the trial court denied Abderholden's application for writ of habeas corpus. The court found that "there is a serious, immediate question concerning the welfare of the child sufficient to allow the Court to take jurisdiction over this child pursuant to § 11.53 and to make appropriate *temporary orders* regarding the child pursuant to § 14.10(d) of the Texas Family Code." (Emphasis added.) The order further recites that "[t]he Court is not ruling on whether it will assume jurisdiction to determine custody at this time." The court ordered Alan placed in Charter Lane Hospital under the care of Dr. Byram Barnes, and gave Morizot temporary exclusive possession of Alan after his release from the hospital except as recommended by the treating professionals, pending further orders of the court. Child support and visitation were temporarily modified.

Approximately thirteen months later, on April 24, and May 8, 1991, the trial court held a hearing on Morizot's motion to modify. On April 29, 1991, the trial court signed an order determining jurisdiction, "over this child over [sic] the parties in [sic] the subject matter of this suit." The district court assumed exclusive jurisdiction over "this matter." Thereafter, on July 26, 1991, pursuant to the master's recommendation, the trial court signed an order naming Morizot sole managing conservator. Abderholden appeals from the July 26th order.

Abderholden brings two points of error on appeal. In the first she alleges that the trial court did not have subject-matter jurisdiction to modify the prior custody order to appoint Morizot as Alan's sole managing conservator. We will sustain Abderholden's first point of error and reverse on that basis. In the second, she alleges there is insufficient evidence that a serious and immediate question existed concerning Alan's welfare. Even assuming that the evidence is sufficient to sustain the trial court's finding, it lacked authority to render an order permanently modifying custody. Accordingly, we need not decide Abderholden's second point of error.

## DISCUSSION

The trial court's July 26th order recites two bases for the trial court's exercise of

---

1. A copy of the petition for a temporary restraining order is not included in the record. At the hearing before Judge Meurer, Morizot's attorney requested a temporary injunction.

subject-matter jurisdiction over Morizot's motion to modify:

> The Court, after receiving the evidence, finds that it has jurisdiction over this cause of action and the parties, as a result of prior proceedings. Further, the Court finds that jurisdiction is proper in Texas pursuant to the provisions of Section 11.53(a)(3)(B) of the *Texas Family Code.*

### 1. Jurisdiction Not Conferred By Prior Proceedings

■■■■ A party may waive a complaint challenging the trial court's assertion of *in personam* jurisdiction by voluntary participation in the trial of the suit. By contrast, subject-matter jurisdiction is a fundamental stricture on the power of the court and a person's voluntary participation in the trial cannot confer subject-matter jurisdiction where it does not otherwise exist. *See Bullock v. Bridges,* 623 S.W.2d 508, 511 (Tex.App.—Austin 1981, writ ref'd n.r.e.), *cert. denied,* 457 U.S. 1135, 102 S.Ct. 2962, 73 L.Ed.2d 1352 (1982). Abderholden's prior participation in, or the mere existence of, prior proceedings, therefore, cannot form the basis for the trial court's assertion of subject-matter jurisdiction over the motion to modify. Furthermore, a custody determination is a status adjudication that is not dependent on personal jurisdiction over the parents. *Henry v. Rivera,* 783 S.W.2d 766, 769 n. 2 (Tex.App.—San Antonio 1990, orig. proceeding). Whether the district court acquired personal jurisdiction over Abderholden does not decide the issue. Subject-matter jurisdiction is determined by reference to the Uniform Child Custody Jurisdiction Act, Tex.Fam.Code Ann. § 11.51 *et seq.* (West 1986 & Supp.1992) (UCCJA). *See Id.*

### 2. Subject–Matter Jurisdiction Based on § 11.53(a)(3)(B)

Abderholden next challenges the trial court's exercise of jurisdiction based on § 11.53(a)(3)(B), which provides in part:

> (a) A court of this state that is competent to decide child custody matters has jurisdiction to make a child custody determination [2] by initial decree or modification decree or order if:

> (3) the child is physically present in this state and:

> . . . .

> (B) it is necessary in an emergency to protect the child because he has been subject to or threatened with mistreatment or abuse or is otherwise neglected or there is a serious and immediate question concerning the welfare of the child.

Tex.Fam.Code Ann. § 11.53(a)(3)(B) (West 1986).

Abderholden argues that § 11.53(d) completely withdraws from the trial court subject-matter jurisdiction to modify custody.

Section 11.53(d) provides:

> Except on written agreement of all the parties, a court may not exercise its continuing jurisdiction to modify custody [3] if the child and the party with custody have established another home state [4] unless the action to modify was filed before the new home state was acquired.

Tex.Fam.Code Ann. § 11.53(d) (West 1986).

The record reflects that Arkansas was Alan's home state at the time this proceeding to modify custody was initiated. Further, the record reflects that Abderholden did not agree in writing to the Texas

---

2. A "custody determination" means a court decision and court orders and instructions providing for the custody of a child, including visitation rights, but does not include a decision relating to child support or any other monetary obligation of any person. Tex.Fam.Code Ann. § 11.52(2) (West 1986).

3. "Custody" means managing conservatorship of a child. Tex.Fam.Code Ann. § 11.52(10) (West 1986).

4. *"Home state" means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.* Tex.Fam.Code Ann. § 11.52(5) (West 1986).

court's exercise of jurisdiction over the motion to modify custody.[5] Abderholden cites *Huffstutlar v. Koons*, 789 S.W.2d 707, 713 (Tex.App.—Dallas 1990, orig. proceeding) as support for her argument that § 11.53(d) withdraws any jurisdictional power conferred by § 11.53(a)(3)(B) in this cause.

Morizot counters that § 11.53(d) is conditional, that it prevents a Texas district court from exercising continuing jurisdiction to make an order modifying managing conservatorship of the child *unless* a provision of § 11.53(a)(3)(B) applies, citing *Soto-Ruphuy v. Yates*, 687 S.W.2d 19, 21 (Tex. App.—San Antonio 1984, orig. proceeding) (emphasis added). *See also Caplan v. Daggett*, 784 S.W.2d 146, 147 (Tex.App.—Houston [14th Dist.] 1990, orig. proceeding).

**a. Section 11.53(d) Does Not "Withdraw" · Jurisdiction When § 11.53(a)(3)(B) Applies**

**i. *Section 11.53(d) Limits Continuing Jurisdiction Only***

 Section 11.53(d) relates to the court's continuing jurisdiction. Pursuant to the Tex.Fam.Code Ann. § 11.05 (West 1986 & Supp.1992), a court retains "continuing, exclusive jurisdiction of all parties and matters provided for ... in connection with the child." Section 11.05(g) confers this continuing jurisdiction on all aspects of the decree, subject only to the restraint of § 11.53(d) which deprives the original court of continuing jurisdiction to modify custody once the custodian and child establish a new home state.

**ii. *Section 11.53(a) Establishes Jurisdiction Independent Of Continuing Jurisdiction***

Section 11.53(a), on the other hand, refers to the establishment of jurisdiction independent of continuing jurisdiction.

Pursuant to § 11.53(a), "[a] court of this state that is competent to decide child custody matters has *jurisdiction* to make a child custody determination by decree or modification decree or order if" one of the four bases set forth in subparagraph (a) are met. Tex.Fam.Code Ann. § 11.53(a) (West 1986).

*Huffstutlar* does not hold to the contrary. In *Huffstutlar*, the trial court asserted jurisdiction to modify custody based on § 11.53(a) after finding that Texas was the child's home state. However, the court of appeals concluded that Oklahoma was the child's home state. The only remaining basis for the court's exercise of jurisdiction was its *continuing* jurisdiction under § 11.05(g), as the court having rendered the original decree. Under these facts, § 11.53(d) prohibited the trial court from exercising its continuing jurisdiction.

Here, the Travis County district court may not exercise its continuing jurisdiction under § 11.05(g) because of the restraints of § 11.53(d).[6] However, this does not prevent the trial court from acting pursuant to § 11.53(a)(3)(B). We turn now to the scope of the trial court's power to act under § 11.53(a)(3)(B).

**b. Section 11.53(a)(3)(B) Confers Limited Emergency Jurisdiction**

 In the alternative, Abderholden argues that § 11.53(a)(3)(B) vests the court with emergency jurisdiction to modify custody temporarily but does not confer jurisdiction to modify custody *permanently*. *See Garza v. Harney*, 726 S.W.2d 198 (Tex. App.—Amarillo 1987, orig. proceeding). We agree.

By its terms, § 11.53(a)(3)(B) confers jurisdiction only in an emergency. Generally, emergency jurisdiction confers only temporary jurisdiction to prevent irreparable and

---

5. Appellee argues that Patricia's voluntarily participation in the January 4th proceedings constitutes a written agreement to the trial court's jurisdiction over the custody matter. There is no merit to this argument. Patricia's verbal acquiescence in having Alan admitted to Charter Lane hospital on a temporary basis simply is not an "agreement in writing."

6. Therefore, to the extent the July 26th order referring to jurisdiction based on Patricia's participation in "prior proceedings" refers to the trial court's continuing jurisdiction to act to modify its decree, § 11.53(d) withdraws such jurisdiction.

immediate harm to children. Absent satisfaction of other UCCJA jurisdictional prerequisites, § 11.53(a)(3)(B) does not confer upon the state exercising emergency jurisdiction the authority to make a *permanent* custody disposition. *Garza*, 726 S.W.2d at 202–03 (emphasis added) (adopting this interpretation of emergency jurisdiction). The *Garza* court relied on language in *Hache v. Riley*, 186 N.J.Super. 119, 451 A.2d 971 (N.J.Ch.Div.1982). The *Hache* court, in limiting a court's exercise of its emergency jurisdiction, cited Brigitte M. Bodenheimer, *Interstate Custody; Initial Jurisdiction and Continuing Jurisdiction Under the UCCJA*, XIV Fam.Law Q. No. 4 (Winter 1981): "Emergency jurisdiction confers authority to make temporary orders, including temporary custody for a limited period of time, pending proceedings in the state with regular jurisdiction under the Act." *Hache*, 451 A.2d at 975.

In *Garza*, an emergency existed as to one of two children located in Texas who were the subject of a motion to modify custody under § 11.53(a)(3)(B). The *Garza* court concluded that despite the existence of a cause pending elsewhere, as to the child for whom an emergency existed, the emergency permitted the district court to render a temporary order for her protection until proper steps could be taken in the original forum to protect the child adequately.[7] *Garza*, 726 S.W.2d at 203.

Limiting emergency jurisdiction under § 11.53(a)(3)(B) to issuance of appropriate temporary orders is consistent with other provisions of the Family Code and promotes the purposes of the Act. *See* Tex. Fam.Code Ann. § 14.10(d) (West Supp. 1992) (trial courts may make appropriate temporary orders when there is a serious and immediate question concerning the welfare of the child); Tex.Fam.Code Ann. § 11.51(a)(3) (West 1986). This interpretation of § 11.53(a)(3)(B) and (d) gives effect to both provisions, and yields a reasonable result. Code Construction Act, Tex.Gov't Code Ann. § 311.021(2), (3), .023(5) (West 1988).

We conclude that § 11.53(a)(3)(B) confers emergency jurisdiction to issue appropriate temporary orders only. Therefore, the trial court exceeded its authority when it made a permanent modification order appointing Morizot managing conservator. Accordingly, we sustain Abderholden's first point of error.

### c. Morizot Argues the Trial Court Has Jurisdiction to Modify Custody Under § 11.53(a)(4)(B)

■ Morizot argues that the trial court has jurisdiction to decide the custody issue under § 11.53(a)(4)(B), because the Arkansas trial court declined to exercise jurisdiction over the matter. Section 11.53(a)(4)(B) provides that a trial court of this state has jurisdiction to make a child custody determination if it is in the best interest of the child that the court assume jurisdiction and another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child. Tex.Fam.Code Ann. § 11.53(a)(4)(B) (West 1986).

There are three references to the Arkansas court in the record. Two of the references are found in two letters from the trial court to counsel for the parties. The first, dated May 30, 1990, recites that the trial court:

> *spoke with Judge McNeil of Arkansas pursuant to the provisions of the Uniform Child Custody Jurisdiction Act regarding this case. We decided* that this court would continue to exercise its limited jurisdiction for the limited purpose of handling further proceedings concerning the serious immediate question of the welfare of the child.

(Emphasis added.) The second letter, dated November 26, 1990, recites, in pertinent part:

> *After further discussion with Judge McNeil of Arkansas, we have agreed and decided* that the Texas Courts should undertake jurisdiction of this case.

---

7. There being no emergency as to the second child, the trial court was without jurisdiction to enter a temporary order as to him. *Garza*, 726 S.W.2d at 202.

(Emphasis added.) Thereafter, on April 29, 1991, the trial court signed an "Order Determining Jurisdiction," which recites, in pertinent part:

Having considered the evidence, pleadings and argument of counsel, *and after having consulted with Judge Andre McNeil in the child's home state,* the Court finds that facts and circumstances sufficient to confer jurisdiction over this child over the parties in the subject matter of this suit exist.

(Emphasis added.)

The case of *In the Interest of Wilson,* 799 S.W.2d 773 (Tex.App.—Tyler 1990, orig. proceeding) is instructive in our determination of whether § 11.53(a)(4)(B) may form the basis for jurisdiction in this cause.[8] The *Wilson* court concluded that a Texas court did not have jurisdiction of custody under § 11.53(a)(4)(B) because Oklahoma was the child's home state and the Oklahoma court did not "decline to exercise jurisdiction" in the manner required by Oklahoma's and Texas' versions of the UCCJA. The provisions of the Oklahoma statute cited in *Wilson* and the provisions of the Arkansas statute[9] applicable in this cause are identical. There, as here, the trial judge contacted the home-state judge by telephone, whereupon the home-state judge, with no custody proceeding pending in his court, agreed with the trial judge to yield the home state's jurisdiction to the State of Texas. In *Wilson,* the home-state judge dictated an order and made findings.

The *Wilson* court said about the procedure used to decline jurisdiction:

It is apparent that the so-called findings made by the Oklahoma judge were based solely on his telephone conversations with the trial judge to which neither appellant nor appellee was privy. In short, the order of declination of jurisdiction over the dispute by the Oklahoma court judge and his "findings" amount to nothing more than an agreement between judges, unsupported by any real evidence submitted during the course of a custody proceeding in the Oklahoma court. Additionally, the trial judge's actions in modifying the Oklahoma decree, based on the Oklahoma "order", violated the plain language of section 11.54 that "reasonable notice and opportunity to be heard must be given to the contestants ...[,]" as well as state and federal due process rights.

*Wilson,* 799 S.W.2d at 775. The *Wilson* court held void the Oklahoma court "order" declining to exercise jurisdiction.

As a preliminary matter, we note that in his motion to modify, Morizot did not plead jurisdiction based on § 11.53(a)(4)(B). Nor does the July 26th order appealed from cite § 11.53(a)(4)(B) as a basis for jurisdiction. The only order referring to the Arkansas court is the Texas district court order of April 29, 1991. That order does not recite that the Arkansas court declined to exercise jurisdiction, only that the Texas trial court, "having considered the evidence, pleadings and argument of counsel and having consulted with" the Arkansas judge, "finds that facts and circumstances sufficient to confer jurisdiction over this child over the parties in the subject matter of this suit exist." The trial court then asserted "exclusive jurisdiction over this matter."

Second, even if the April 29th order is construed as reciting that the Arkansas court agreed to decline to exercise jurisdiction, the record on appeal does not contain findings, or an order, from the Arkansas court. There is no evidence to indicate that the Arkansas court held a hearing on the question of jurisdiction. At best, the record indicates an agreement between judges, which is not sufficient. *See Wilson,* 799 S.W.2d at 775. As in *Wilson,* the parties here were not provided with an opportunity to be heard on the issue of whether the Arkansas trial court should decline to exercise its jurisdiction, nor is

8. In *Wilson,* as here, the Texas court denied appellant's petition for writ of habeas corpus, overruled appellant's plea to the jurisdiction, and granted appellee's motion to modify.

9. Pursuant to Tex.R.Civ.Evid. 202, we judicially note Arkansas Code Ann. § 9–13–207, 221 (Michie 1991).

there any record that the Arkansas court considered the statutory factors it is required to consider in making such a determination. Finally, under Texas law, any communication from another state informing this state of a finding of inconvenient forum because a court of this state is the more appropriate forum must be filed in the custody registry of the appropriate court. Tex.Fam.Code Ann. § 11.57(i) (West 1986); *see also* Tex.Fam.Code Ann. § 11.-66(3) (West 1986). No record of such a communication is before us. We conclude that the Arkansas court did not properly decline to exercise jurisdiction under both the Texas and Arkansas versions of the UCCJA.

### CONCLUSION

The trial court has emergency jurisdiction over the subject matter of this suit under § 11.53(a)(3)(B) which confers authority to render only temporary orders. No other provision of § 11.53(a) empowers the trial court to act further. Accordingly, the trial court exceeded its authority when it permanently modified custody by appointing Morizot sole managing conservator. Appellant's first point of error is sustained.

The trial court's order modifying custody is reversed. The cause is remanded to the trial court with instructions that the portion of Morizot's "Motion to Modify In Suit Affecting the Parent–Child Relationship and Motion For Temporary Orders" seeking permanent orders modifying the managing conservatorship be dismissed for want of subject-matter jurisdiction and for any further proceedings consistent with this opinion.

Reversed and Remanded with Instructions.