**Opinion issued December 19, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00240-CV

————————————

## IN RE NICOLETTE MILTON, Relator

---

**Original Proceeding on Petition for Writ of Mandamus**

---

**DISSENTING OPINION**

I respectfully dissent. I would conditionally grant the writ of mandamus and order the Harris County trial court to vacate its orders and dismiss the case.

The Texas courts lack jurisdiction to entertain the underlying suit for a divorce and an initial child custody determination under the Uniform Child Custody and Jurisdiction Enforcement Act ("UCCJEA"). The suit should be

dismissed for lack of subject matter jurisdiction and for failure of the plaintiff, real party in interest Jonathan Milton, to establish mandatory residency requirements necessary to maintain a suit for divorce. Nevertheless, this Court, without reference to the applicable guiding rules and principles and without addressing issues necessary to the proper disposition of this original proceeding, transfers this case to Fort Bend County—a county in which no petition meeting the mandatory residency requirements has ever been filed in this case and from which the case had been transferred sua sponte and without legal authority, without any orders having been issued by that judge, to Harris County, a county that lacks both mandatory venue and jurisdiction. At the time of transfer, no party lived in Harris County or had expressed any intent to do so, and the mother, relator Nicolette Milton, and the child, J.A.M., had established residency in Utah more than six months earlier.

In January 2013—almost a year after Jonathan filed a suit affecting the parent-child relationship ("SAPCR") and a divorce petition in Fort Bend County without satisfying the residency requirements; eleven months after Nicolette and J.A.M. moved to Utah; five months after the Fort Bend County court transferred the suit to Harris County, a county lacking both jurisdiction and venue and with no connection to the proceedings; and four months after Nicolette filed a proper suit for divorce and an initial child custody determination in Utah, her state of

residence and J.A.M.'s home state at that time—Jonathan filed a first amended petition in Harris County, initiating a new suit for an initial determination of child custody in Harris County. Neither mandatory residency requirements nor subject matter jurisdiction under the UCCJEA could be established in Harris County.

Despite lacking both jurisdiction and venue, the Harris County court proceeded to issue a string of orders in favor of Jonathan and punitive to Nicolette without hearing evidence and in violation of numerous provisions of the Texas Family Code and the UCCJEA. These orders included a writ of attachment of J.A.M., whose home state is Utah, and a writ of capias for the arrest of Nicolette, likewise a resident of Utah, for failure to abide by the Harris County court's orders. Although this Court vacates the Harris County court's contempt order and writ of capias, it leaves the remaining orders intact, rather than voiding them, and it transfers the case to Fort Bend County, without having authority to do so and relying on inapplicable transfer of venue principles. This Court then abates this proceeding for the Fort Bend County court to consider the temporary orders.

Because I believe this Court is without subject matter jurisdiction to do anything other than grant a writ of mandamus and order the Harris County court to vacate its orders as void and to dismiss this suit, and because I believe the majority has failed to address and dispose of every issue properly before this Court and necessary to the proper disposition of this mandamus proceeding and the

3

underlying case, I dissent. Because I also believe the majority opinion omits facts necessary to the proper disposition of this case, I have restated the full background of this case below. I would grant the petition for mandamus and order the Harris County court to vacate its orders and dismiss the underlying suit.

## Background

On February 10, 2012, Jonathan filed a form "petition for divorce with children" in Fort Bend County naming J.A.M. as the only child of the marriage. In this petition, Jonathan, who was acting pro se, checked two boxes indicating that both he and Nicolette, to whom he had been married for three months, had lived in Fort Bend County for the past ninety days, as required by Family Code section 6.301 for maintaining a suit for divorce in a particular county. *See* TEX. FAM. CODE ANN. § 6.301 (Vernon 2006). It is undisputed that Jonathan, Nicolette, and J.A.M. had moved to Fort Bend County from Harris County on December 31, 2011, and, therefore, they had not resided in Fort Bend County for ninety days at the time of filing. Nicolette and J.A.M., who was eight months old at the time and who had lived his entire life in Texas, had left the marital home for a women's shelter the day before, on February 9, 2012, and left Texas for Utah on February 11, 2012. Jonathan did not request that the trial court abate the Fort Bend County proceedings until he satisfied the ninety-day residency requirement, and he did not

4

file an amended petition after the ninety-day period had passed. Jonathan served Nicolette via publication in March 2012.

On May 21, 2012, Nicolette filed a special appearance. She argued that the trial court lacked personal jurisdiction over her because her domicile was in Utah, not Texas. She argued that the Fort Bend County court should dismiss the case because it lacked subject matter jurisdiction under the UCCJEA or, alternatively, that it should decline jurisdiction under the UCCJEA because Texas was an inconvenient forum and Utah was a more appropriate forum.[1]

Nicolette asked the Fort Bend County court to make a determination as to her special appearance before making any other ruling. She attached an affidavit asserting that she had left Jonathan due to a domestic violence incident and that Jonathan was verbally and "borderline physically" abusive to her son from a prior marriage and verbally and sexually abusive and unfaithful to her. She further stated that she left "to be with [her] parents and family out of fear for [the] safety [of her and her children]."

Without ruling on Nicolette's special appearance or on her motion to dismiss for lack of subject matter jurisdiction, and without making any other ruling in

---

[1] *See* TEX. FAM. CODE ANN. § 152.201 (Vernon 2008) (stating when Texas court has jurisdiction to make initial child custody determination); *id.* § 152.207 (Vernon 2008) (providing that Texas court that has jurisdiction may decline to exercise jurisdiction if it determines that it is inconvenient forum and court of another state is more appropriate forum).

Jonathan's SAPCR, the Fort Bend County court sua sponte transferred the divorce and SAPCR proceedings to Harris County on August 16, 2012, by docket entry. On August 23, 2012, the Harris County court that is the subject of this mandamus proceeding received and filed the case and assigned it cause number 2012-50381. At the time of transfer, Nicolette and J.A.M. had resided in Utah for over six months and J.A.M. had established a new home state in Utah. Jonathan did not file a mandamus petition protesting the transfer of the proceedings to a county in which neither of the parties lived. Nor did he file an amended petition for divorce after his case was transferred to Harris County.

On September 5, 2012, Nicolette filed a petition for divorce and a SAPCR in the Third District Court in Salt County, Utah, seeking sole custody of J.A.M. and the entry of other orders.

On December 13, 2012, Jonathan, who had still not filed any pleadings in the Harris County court, filed a motion for temporary orders and noticed a hearing in that court for January 8, 2013. The case was reset by the Harris County court to January 24, 2013, to allow Jonathan to amend or supplement his pleadings to include a request for temporary orders.

On December 28, 2012, personal service in the Utah suit was made on Jonathan by a Fort Bend County constable. Jonathan appeared in Utah and answered.

On January 9, 2013, Jonathan filed his "First Amended Petition for Divorce" in the Harris County court, seeking a divorce and an initial determination of child custody. The petition recited that Jonathan had been "a domiciliary of Texas for the preceding six month period and a resident of this county for the preceding ninety-day period." The first of these residency statements was correct, and the second was false. The petition requested service of process on Nicolette under Texas's long-arm statute, averring that she was "no longer a []resident of Texas" and that the suit was "filed before the second anniversary of the date on which marital residence ended." The petition failed to state that Nicolette and J.A.M. had moved to Utah eleven months earlier, that J.A.M. had established a new home state in Utah, or that Nicolette had commenced divorce and custody proceedings in Utah.

The petition filed by Jonathan in Harris County on January 9, 2013, named J.A.M. as the only child of the marriage and averred, "There are no court-ordered conservatorships, court-ordered guardianships, or other court-ordered relationships affecting the child the subject of this suit." In this petition, Jonathan requested that the trial court "make temporary orders and issue any appropriate temporary injunctions for the preservation of the property and protection of the parties and for the safety and welfare of [J.A.M.] as deemed necessary and equitable." Jonathan

also requested that he and Nicolette be named joint managing conservators of J.A.M.

It is undisputed that, at the time he filed his amended petition in Harris County, Jonathan resided in Fort Bend County, as he had for the preceding twelve months, and that Nicolette and J.A.M. had resided in Utah for the preceding eleven months. It is also undisputed that Nicolette's petition for divorce and SAPCR requesting temporary orders had been on file in Utah for four months and that Jonathan had appeared in the Utah court and answered.

On January 15, 2013, Nicolette filed a motion for temporary relief in the Utah court seeking to establish exclusive jurisdiction over the SAPCR and divorce in Utah. She represented that she was a fit parent, that she had been the primary care provider for J.A.M., and that Jonathan had requested to see J.A.M. only once in the past eleven months. She sought physical custody of J.A.M., supervised visitation for Jonathan, mutual injunctions, child support, and a marital property division. She set the motion for a hearing on Friday, February 1, 2013, and sent notice to Jonathan's Utah counsel.

On January 24, 2013, Nicolette filed a "First Amended Special Appearance and Motion to Dismiss" in Jonathan's Harris County suit. She argued that Jonathan had been a resident of Fort Bend County since January 2012; thus, when he filed his amended petition in Harris County on January 9, 2013, he did not meet

8

the Family Code's mandatory statutory requirement that either he or his spouse had lived in the county in which he filed suit for the preceding ninety-day period. *See* TEX. FAM. CODE ANN. § 6.301. Nicolette argued that the trial court should dismiss Jonathan's suit for failure to satisfy the mandatory residency requirements necessary for the court to maintain a suit for divorce.

Nicolette also argued that Texas did not have "home state" jurisdiction to make an initial child-custody determination pursuant to the UCCJEA because she and J.A.M. had moved to Utah in February 2012, and, thus, J.A.M. had not resided in Texas for the six-month period preceding the date Jonathan filed his amended petition in Harris County, as required by Family Code section 152.201. Nicolette requested, in the alternative, that, if the trial court determined that it did have subject matter jurisdiction, it should decline to exercise jurisdiction on the basis that Texas was an inconvenient forum under Family Code section 152.207.

That same day, January 24, 2013, the Harris County court held a hearing on Nicolette's special appearance and motion to dismiss. Both Jonathan and Nicolette testified at this hearing. Jonathan testified that he and Nicolette had married in Harris County in November 2011. They then moved with J.A.M., who was six months old at the time, to Fort Bend County from Harris County on December 31, 2011. Jonathan then filed his original petition for divorce in Fort Bend County on February 10, 2012. He agreed that he had not resided in Fort Bend County for

ninety days before filing suit. Jonathan also agreed that he was still a resident of Fort Bend County when he filed his amended petition in Harris County on January 9, 2013, and that he had resided in Fort Bend County for the ninety-day period preceding the filing of his amended petition in Harris County. Jonathan also testified that J.A.M. had been living with Nicolette in Utah since February 2012. He had visited Nicolette and J.A.M. in Utah in November 2012, and he testified that this was the only time he had seen J.A.M. since he had filed for divorce.

Nicolette testified that she left the marital residence for a women's shelter on February 9, 2012, and that she left Texas for her parents' home in Utah the next day. Nicolette stated that she and Jonathan had tried to work out a custody agreement, but this attempt was unsuccessful, and she had asked Jonathan to stop communicating with her due to his repeated use of vulgar language. Nicolette also testified that she did not have any family in Texas and that, due to limited financial resources, it would be "almost impossible" for her to move back to Texas. She stated that she and J.A.M. lived with her parents, that she received state assistance, and that she had a job in Utah.

Nicolette's testimony was the only testimony presented concerning J.A.M.'s current living conditions. Jonathan presented no evidence regarding J.A.M.'s care, protection, training, or personal relationships, nor did he reference any such evidence located in Texas. The Harris County court did not hear any other

evidence regarding J.A.M.'s best interests or his current connection with Texas, other than the mere physical presence of Jonathan in this state. Likewise, the court neither sought nor received evidence regarding whether the UCCJEA factors relevant to the determination of initial child custody jurisdiction or forum non conveniens were satisfied.

Although Nicolette's special appearance and motion to dismiss were subjects of the hearing and she had asked that they be accorded priority, and although the Harris County court was aware that Nicolette had filed a suit for divorce and SAPCR in a court of proper jurisdiction in Utah, the court did not immediately rule on Nicolette's special appearance or her motion to dismiss. The court instead indicated its intent to confer with the Utah court concerning which court should exercise jurisdiction and was told by Nicolette's counsel that the information the court was seeking was in the court's file, that Jonathan had a lawyer in Utah who had filed an appearance in Utah, and that Nicolette's Utah lawyer was likewise on the Utah pleadings contained in the Harris County court's file.

Jonathan's counsel then made an oral request for temporary orders regarding custody of J.A.M. because Jonathan had only seen J.A.M. once in the past year. The Harris County court determined that it had the power "to sua sponte, issue temporary orders in the best interest of this child and that's exactly what I'm going

to do." The court then sua sponte awarded Jonathan temporary custody of J.A.M., ordered that Jonathan take physical possession of J.A.M. "right now," and ordered that Jonathan have "the next two weeks with this child." No such request had been made by Jonathan, either orally or in writing, and no evidence of any emergency or any immediate threat to J.A.M. was presented to the court. The Harris County court's oral orders also included an unspecified "standard set of injunctions" to include "things, like not hiding or secreting the child away, not calling each other repetitively or making kind of unlawful threats to anybody, these types of things."

The next day, January 25, 2013, Jonathan's counsel filed a form of order with the Harris County court. The court interlineated the form of order and signed it the same day, formalizing what the trial court had referred to as "band aid orders." The written order filed by Jonathan's counsel and signed by the Harris County court contained a number of provisions not orally pronounced by the court at the hearing the day before. It informed the parties that the court would hold a status conference on February 7, 2013, and would possibly enter additional temporary orders at that time. The written order also included a provision requiring Nicolette to present J.A.M. to Jonathan at the Salt Lake City International Airport at 6:00 p.m. on January 25, 2013—the same day the order was filed and signed—for Jonathan to have two weeks' visitation with J.A.M.; and it ordered

12

Nicolette to pick J.A.M. up at Jonathan's address in Fort Bend County at 8:00 p.m. on February 8, 2013.

The Harris County court's signed January 25 "band aid" orders warned that failure to comply with a court-ordered child support or possession order could result in a contempt of court finding, which could be punished by a fine or confinement in jail. The form of order did not contain a certificate of service, and there is no indication in the record that either the form of order or the signed order was sent by either the Harris County court or Jonathan's counsel to Nicolette's Texas or Utah counsel or was otherwise communicated to her.

Jonathan flew to Utah on January 25, 2013, the same day the Harris County court signed the "band aid" orders that required Nicolette to turn J.A.M. over to Jonathan in Utah at 6:00 p.m. later that day.

On January 28, 2013, three days after Nicolette failed to surrender J.A.M. to Jonathan on January 25 in Utah, as required by the Harris County court's emergency temporary orders, Jonathan moved the Harris County court to enforce its "band aid" orders. Jonathan requested that the trial court hold Nicolette in contempt and fine her because she had failed to surrender J.A.M. to him. He further requested that Nicolette be confined in the Harris County jail for eighteen months, or until she complied with court's order, and that she be placed on community supervision in Harris County for ten years on her release from jail or

suspension of commitment. He included a conclusory statement that enforcement of the "band aid" orders was "necessary to ensure the child's physical safety or emotional welfare." He sought attorney's fees, enforcement of child support, and pre- and post-judgment interest. Finally, he requested that the trial court order a bond or other security to ensure Nicolette's compliance with the court's possession order.

Attached to Jonathan's January 28, 2013 motion for enforcement was a form of order with a signature blank for the Harris County court requiring Nicolette to appear in that court for a hearing on the motion on February 7, 2013, at 9:00 a.m. The motion contained no certificate of service. The form of order was not signed by the Harris County trial court.

On February 6, 2013, the Harris County court faxed the parties a letter stating that it had conferred with the Utah trial court pursuant to the UCCJEA. The court attached to this letter an official ruling from the commissioner assigned to the Utah trial court—not from the assigned judge—dated February 1, 2013, the date of the hearing scheduled by Nicolette on her motion for temporary orders in Utah. The Utah commissioner recited that the Harris County court "provided the Commissioner with some background in this matter" and that it was the commissioner's "understanding that [the Harris County court] has already entered

some temporary Orders in the Texas action, and that she will rule on some additional issues at a status conference scheduled before her in early February."

The Utah commissioner "indicated that the matter had not been before him for hearing and that there was little information in the file, apart from the Petition and the Motion to Dismiss with a corresponding Memorandum." He continued,

> After discussion, the Commissioner and [Harris County] Judge Dean concluded that, based upon the information available, it would appear that the state of Texas would have "home state" jurisdiction in this matter. The undisputed evidence appears to be that the petitioner moved to the state of Utah with the parties' minor child in February of 2012, and the respondent in this action, who is the petitioner in the Texas action, filed his divorce action in Texas approximately one to two months thereafter. Therefore, although, at the time the Utah action was filed, the child had resided in the state of Utah with the petitioner for more than six months, such was not the case at the time of the initiation of the earlier action, in Texas.

The commissioner determined that because "there is a pending Texas action with proper jurisdiction, it would not be appropriate to go forward with respect to any custody or parent time determinations in this court."

In its February 6 fax to the parties' Texas counsel, the Harris County court denied Nicolette's special appearance and motion to dismiss and found that it had home-state jurisdiction to render an initial child custody determination. It also attached the court's January 25 "band aid" orders.

The next day, February 7, 2013, the Harris County court held its second hearing, titled a "status hearing." Nicolette was not present at this hearing, and her

15

Texas counsel informed the court that he was representing her solely on the special appearance, the denial of which he had received the day before. He asked to be excused with regard to any other matters.

Nicolette's Texas counsel also informed the Harris County court that he received the Utah order with the fax from the Harris County court sent the day before and that he had received a notice of appeal filed in Utah by Nicolette's Utah counsel with respect to the order of the Utah commissioner's dismissing that case. He expressed his understanding that the Utah commissioner who had conversed with the Harris County court "does not have the ability to hear jurisdictional matters based on the pleadings that I've received" and that Nicolette was entitled to a trial de novo of the Utah commissioner's order declining jurisdiction.

The Harris County court replied, "[A]t this particular time, based on my conversation and not what Utah decided, but rather what I heard in this court, this court has invoked jurisdiction of this case." The court stated, "I think I made it very clear that I expected everybody to be here." The court then turned to Jonathan, who informed the court that he had traveled to Utah to see J.A.M. and that Nicolette "never showed up" and "cut off her phone so [he] wouldn't call her."

Nicolette's attorney clarified that his only involvement with this suit was the special appearance. He stated, "There's no other pleadings on file. The case as filed was a publication with child." He further stated, "This was supposed to be a

status conference and I think the status has been given to the Court," namely that Nicolette was pursuing her remedies in Utah. He reiterated that he had not been hired to represent Nicolette on any matters other than the special appearance, of which he had just received the denial; that he was not the attorney of record for Nicolette, for whom the Harris County court had a Utah address in the file; that once he could submit an order recording the Harris County court's rendition of judgment on the special appearance, as requested by the court in its February 6 fax, he considered his involvement in the case terminated; that he lacked authority to proceed; and that he had not filed any pleadings. The court excused Nicolette's counsel and found that Nicolette was not present although "she was here and in open court, was told and noticed by this Court that we would be having a status conference regarding, not only the UCCJEA, but also regarding the possibility of entering some additional temporary orders."

After the Harris County court excused Nicolette's Texas attorney, Jonathan's attorney orally requested that the Harris County court issue temporary orders naming Jonathan as temporary sole managing conservator, requiring Nicolette to pay interim child support, and requiring that Nicolette have supervised visitation periods with J.A.M. in Houston. He could not confirm to the trial court that Nicolette had had notice of the relief Jonathan was seeking. The court verified that the only pending motion on file was Jonathan's motion for enforcement of the

17

January 25, 2013 "band aid" orders, but it stated, "that's not something set for today." The court also stated, "I'm unaware as to whether or not we ever got a written order regarding even [the status conference]. I don't see it in [the file]."

Without receiving any evidence, the Harris County court named Jonathan temporary sole managing conservator of J.A.M. The court also found that there was a threat that Nicolette would remove J.A.M. from Texas and "hide and secrete the child from the Court and the father." As a result, the court ordered that all of Nicolette's visitations with J.A.M. had to be exercised through the SAFE Supervised Visitation Program in Harris County. The court also ordered Nicolette to pay a specified amount of interim child support to Jonathan for J.A.M.'s benefit.[2]

On February 14, 2013, Jonathan's counsel filed a form of "Temporary Orders (Default)" in the Harris County court. This twenty-six-page form of order reflected and augmented the Harris County court's orders orally pronounced at the ex parte hearing. The original date on the form of order of January 24, 2013, was

---

[2] The court stated:

> I am basing these temporary orders based on first the father's request, but more importantly I'm doing this sua sponte at this point since the fact the mother was ordered to be here, was here in open court when I indicated that I expected all parties to be here. In addition to that, [she] was put on notice that day, that the status conference was specifically to check and make sure that the father had seen the child as well as to entertain additional temporary orders based on the conduct of all the parties."

scratched through and the handwritten date "February 7, 2013" was substituted on the form. The order appointed Jonathan sole managing conservator of J.A.M. with the exclusive right to designate his primary residence. It named Nicolette temporary possessory conservator. It found that there was a threat Nicolette would leave the jurisdiction and ordered that she have visitation with J.A.M. only through the Harris County SAFE program. It ordered her to schedule an intake visit with that program by March 1, 2013, and to bear all costs of the program. It further ordered her to pay a specified amount of child support to Jonathan and to provide health insurance for J.A.M.

This form of order recited that the "Petitioner and Respondent waive issuance and service of the writ of injunction, by stipulation or as evidenced by the signatures below" and further recited, "IT IS ORDERED that Petitioner and Respondent shall be deemed to be duly served with the writ of injunction." The form of order was signed only by Jonathan's counsel, and there was no signature blank for Nicolette or her counsel. There was no certificate of service. The Harris County court signed the order the next day, February 15, 2013.

On February 28, 2013, Jonathan moved the Harris County court to hold Nicolette in contempt for failing to surrender J.A.M. in response to the court's "Temporary Orders (Default)" and its previous "band aid" orders. After another ex parte hearing on Jonathan's motion to enforce, held that same day, the Harris

19

County court issued a writ of attachment, commanding any sheriff or constable to deliver J.A.M. to Jonathan and ordering Jonathan to present J.A.M. before the court for a hearing "to determine the right to possession of the child." The court simultaneously issued an order for capias for Nicolette's arrest due to her failure to turn J.A.M. over to Jonathan pursuant to the court's orders.

The mandamus record contains a fax of the signed "Temporary Orders (Default)" from the Harris County court to Jonathan's counsel and Nicolette's Texas counsel dated March 12, 2013. In the orders, the Harris County court acknowledged that Nicolette's Texas counsel appeared at the February 7, 2013 hearing, "announced his representation had ended and requested to be and was dismissed from the hearing, but stayed in the Court." There is also a one-page document in the record titled "Corrected Temporary Orders (Default)," filed February 14, 2013, which recites that, on February 7, 2013, following the dismissal of Nicolette's counsel from the hearing, "[t]he Court proceeded by default."

There is no indication in the mandamus record that Nicolette or her counsel received a copy of the form of "Temporary Orders (Default)" filed with the Harris County court by Jonathan's counsel on February 14, the "Temporary Orders (Default)" signed by the Harris County court, or the notice that the court proceeded by default following the dismissal of Nicolette's counsel prior to the Harris County court's March 12, 2013 fax to Nicolette's Texas counsel. There is no indication

20

that Nicolette received a copy of the writ of attachment for J.A.M. or the order for her own arrest prior to the Harris County court's March 12, 2013 fax to Nicolette's Texas counsel.

In this mandamus proceeding, filed March 25, 2013, Nicolette seeks relief from the Harris County court's order denying her special appearance and motion to dismiss and from all other orders issued by the Harris County court in this case, specifically including its temporary orders, finding of contempt, order of capias, and writ of attachment. She requests that this Court order the Harris County court to vacate its orders and dismiss the suit. We stayed proceedings in the Harris County court by order dated May 1, 2013. I would grant the mandamus, vacate all of the Harris County court's orders, and dismiss the suit.

## Standard of Review in Mandamus Proceedings

To be entitled to mandamus relief, a party must establish that the trial court clearly abused its discretion and that she lacks an adequate remedy by appeal. *See In re Green*, 385 S.W.3d 665, 668 (Tex. App.—San Antonio 2012, orig. proceeding) (citing *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding) and *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding)). A trial court abuses its discretion concerning factual matters if the record establishes that the trial court could reasonably have reached only one decision. *Id.* at 668–69 (citing *Walker*, 827 S.W.2d at 840). A

trial court has no discretion in determining what the law is or in applying the law to the particular facts. *Id.* at 669 (quoting *Walker*, 827 S.W.2d at 840). A clear failure by the trial court to analyze or apply the law correctly constitutes an abuse of discretion. *Id.* (quoting *Walker*, 827 S.W.2d at 840).

Mandamus relief may be necessary (1) to preserve a relator's substantive or procedural rights from impairment or loss; (2) to allow appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in an appeal from a final judgment; and (3) to prevent the waste of public and private resources invested into proceedings that would eventually be reversed. *See In re Prudential,* 148 S.W.3d at 136; *In re Green*, 385 S.W.3d at 671. We employ a balancing test to determine whether the benefits of mandamus relief outweigh the detriments in a particular case and, therefore, whether the appellate remedy is adequate. *In re Prudential*, 148 S.W.3d at 136; *In re Green*, 385 S.W.3d at 671.

The Texas Supreme Court has held that, although generally, venue decisions are incidental trial rulings correctable by appeal, in cases involving SAPCRs "the need to expeditiously resolve custody and support issues makes ordinary appeal inadequate." *In re Mo. Pac. R.R. Co.*, 998 S.W.2d 212, 215 (Tex. 1999) (orig. proceeding); *In re Rowe*, 182 S.W.3d 424, 426 (Tex. App.—Eastland 2005, orig. proceeding) (recognizing exception to general rule for venue rulings in SAPCRs) (citing *Canadian Helicopters Ltd. v. Wittig*, 876 S.W.2d 304, 308 n.11 (Tex.

22

1994)); *see In re Calderon*, 96 S.W.3d 711, 715 (Tex. App.—Tyler 2003, orig. proceeding) ("Remedy by regular appeal, though available, is frequently inadequate to protect the rights of parents and children to trial in a particular venue."). Specifically, mandamus is an appropriate remedy to correct a trial court's error in failing to enforce mandatory residency requirements under Family Code section 6.301. *See In re Green*, 385 S.W.3d at 671 (determining mandamus relief appropriate when divorce proceeding could not be maintained in Texas; judgment would be reversed on appeal; both parties lived in Germany; neither party had any intent to move back to Texas; and single bank account was parties' only connection to Texas).

Likewise, mandamus relief can be appropriate to enforce jurisdictional provisions of the UCCJEA. *See Geary v. Peavy*, 878 S.W.2d 602, 603–04 (Tex. 1994) (orig. proceeding); *In re Alanis*, 350 S.W.3d 322, 328–29 (Tex. App.—San Antonio 2011, no pet.) (citing *In re Prudential*, 148 S.W.3d at 135–37 and *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 676–79 (Tex. 2007), and determining trial court's refusal to decline jurisdiction under UCCJEA is "closely analogous" to other inconvenient forum cases, and mandamus relief is available). The San Antonio Court of Appeals held in *In re Alanis* that mandamus relief was available when the trial court refused to decline jurisdiction under the UCCJEA "because denial of such a motion to dismiss cannot be adequately rectified on appeal" and

"[a]llowing the California court to move forward with the merits of the case at this time, instead of waiting for the issue to be appealed after the conclusion of the case, would promote judicial economy and avoid wasting the time and resources of the parties in a Texas court."  350 S.W.3d at 328–29.

Finally, mandamus is an appropriate remedy to attack the issuance of temporary orders in a divorce proceeding.  *See In re Derzapf*, 219 S.W.3d 327, 334–35 (Tex. 2007) (orig. proceeding); *Dancy v. Daggett*, 815 S.W.2d 548, 549 (Tex. 1991) (orig. proceeding) (per curiam).

**Statutory Residency Requirements for Maintaining a Suit for Divorce**

In her first issue, Nicolette contends that this Court should order the Harris County court to dismiss Jonathan's divorce petition and SAPCR because Harris County is not a county of proper venue under Family Code section 6.301, which establishes mandatory residency requirements for maintaining a suit for divorce in Texas.  Although the majority agrees that mandatory residency requirements cannot be satisfied in Harris County, it reasons that the requirements can be satisfied in Fort Bend County, and, therefore, it orders the Harris County court to transfer the underlying case to Fort Bend County instead of dismissing the case.

I believe the majority's reliance on transfer of venue provisions to transfer this case to Fort Bend County is misplaced and that established law requires dismissal, quite apart from the jurisdictional problems with this case.  It is

24

undisputed that the residency requirements pleaded by Jonathan when he filed his suit in Fort Bend County were false. He had not lived in Fort Bend County for the required ninety days necessary to maintain a suit for divorce, and he never filed a motion for abatement or a new petition asserting correct residency facts after the mandatory ninety-day residency requirement was satisfied. It is also undisputed that no action was taken by the Fort Bend County court other than to transfer Jonathan's file to Harris County, a county that indisputably lacked venue. Transfer under these circumstances is without warrant in law, and dismissal is required by law. Even if this case were transferrable by this Court from Harris County back to Fort Bend County, however, any petition that Jonathan could file in Fort Bend County would constitute the filing of a new suit—more than a year after Nicolette filed suit in Utah, her state of residence and J.A.M.'s home state under the UCCJEA.

The right to seek a divorce is a statutory right, and, as such, "the state has the right to determine who are entitled to use its courts for that purpose and upon what conditions they may do so." *In re Green*, 385 S.W.3d at 669 (quoting *Wood v. Wood*, 320 S.W.2d 807, 810 (Tex. 1959)). In that regard, Family Code section 6.301 establishes mandatory residency requirements for maintaining a suit for divorce in a particular Texas county. It provides,

> A suit for divorce may not be maintained in this state unless at the time the suit is filed either the petitioner or the respondent has been:

25

(1) a domiciliary of this state for the preceding six-month period; and

(2) a resident of the county in which the suit is filed for the preceding 90-day period.

TEX. FAM. CODE ANN. § 6.301.

Although section 6.301 is not a mandatory venue statute, it functions as one. *See In re Green*, 385 S.W.3d at 669–70 (stating that trial court cannot maintain suit unless residency requirements of section 6.301 are met and that, when those requirements are not met, trial court typically abates suit so that residency requirements can be met). The Family Code provides the "*exclusive* mechanism for transferring suits affecting the parent-child relationship," and its procedures "were designed to supplant the regular venue rules." *In re Nabors*, 276 S.W.3d 190, 194 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding) (emphasis in original).

Further, although section 6.301 is not itself jurisdictional, it is akin to a jurisdictional provision because it controls a petitioner's right to maintain a suit for divorce and is a mandatory requirement that cannot be waived. *See In re Green*, 385 S.W.3d at 669; *Reynolds v. Reynolds*, 86 S.W.3d 272, 276 (Tex. App.—Austin 2002, no pet.); *see also Stallworth v. Stallworth*, 201 S.W.3d 338, 345 (Tex. App.—Dallas 2006, no pet.) ("The provisions of the residency statute are not jurisdictional, but rather provide the necessary qualifications for bringing an action

26

for divorce."). "Though not jurisdictional, the residency requirement protects the interests of the State as well as the parties, and cannot be waived by the parties." *McCaskill v. McCaskill*, 761 S.W.2d 470, 473 (Tex. App.—Corpus Christi 1988, writ denied).

Residency in a suit for divorce must be established as of the date the suit for divorce is filed; it is not enough that ninety days of residency will pass during the pendency of the divorce proceeding. *In re Rowe*, 182 S.W.3d at 426. The trial court cannot maintain the suit for divorce unless the residency requirements are met. *See In re Green*, 385 S.W.3d at 669; *In re Marriage of Lai*, 333 S.W.3d 645, 648–49 (Tex. App.—Dallas 2009, orig. proceeding) (affirming dismissal of divorce action for failure of husband and wife to satisfy residency or domiciliary requirements necessary to maintain action and holding UCCJEA served as independent basis for dismissal). The public policy behind these requirements is to prevent forum shopping by divorce litigants. *Reynolds*, 86 S.W.3d at 277.

If the petitioner has not met section 6.301's residency requirement when the original petition is filed, and he subsequently files an amended petition after the residency requirement is met, *the filing of the amended petition constitutes the filing of a new suit*, following which the divorce suit may proceed. *Whiteman v. Whiteman*, 682 S.W.2d 357, 358 (Tex. App.—Dallas 1984, no writ); *see Wilson v. Wilson*, 494 S.W.2d 609, 612 (Tex. Civ. App.—Houston [14th Dist.] 1973, writ

dism'd); *Shankles v. Shankles*, 445 S.W.2d 803, 805 (Tex. Civ. App.—Waco 1969, no writ). An amended pleading supersedes and supplants an earlier pleading and "the instrument for which it is substituted shall no longer be regarded as a part of the pleading in the record of the cause . . . unless it be necessary to look to the superseded pleading upon a question of limitation." TEX. R. CIV. P. 65; *see Seung Ok Lee v. Ki Pong Na*, 198 S.W.3d 492, 494 (Tex. App.—Dallas 2006, no pet.) (holding that amended petition in divorce action supersedes original petition as basis for determining jurisdiction of trial court).

Although section 6.301's residency requirements are mandatory, if the requirements are not satisfied at the time the petitioner files his original petition, this defect can be cured if the petitioner files an amended petition after he has satisfied the residency requirements. *See In re Green*, 385 S.W.3d at 669; *Hoffman v. Hoffman*, 821 S.W.2d 3, 6 (Tex. App.—Fort Worth 1992, no writ); *Whiteman*, 682 S.W.2d at 358. Thus, typically, when the residency requirements have not been met as of the filing of the original petition, the trial court abates the suit so that the petitioner can meet the residency requirements. *See In re Green*, 385 S.W.3d at 670; *Reynolds*, 86 S.W.3d at 277 ("The failure of a divorce petition to properly allege residency renders the suit subject to abatement."). Once a party files a plea in abatement, the trial court should abate the proceedings until at least one of the parties has satisfied the mandatory residency requirements. *Oak v. Oak*,

814 S.W.2d 834, 838 (Tex. App.—Houston [14th Dist.] 1991, writ denied). "[T]he proper remedy in sustaining a plea in abatement is not to dismiss but to retain the case on the docket, so that when the impediment to prosecution of the suit is removed it may be revived." *Svensen v. Svensen*, 629 S.W.2d 97, 98 (Tex. App.—Dallas 1981, no writ).

However, because section 6.301 requires the residency requirements to be met "at the time the suit is filed," if the requirements are not met at the time of the original petition, the petitioner *must* file an amended petition to allow the suit to proceed. *See* TEX. FAM. CODE ANN. § 6.301; *In re Rowe*, 182 S.W.3d at 426 (stating that it is not enough that ninety days of residence in county will pass during pendency of proceeding). Thus, when the petitioner does not meet section 6.301's residency requirements at the time he files his original petition, an affirmative act from him is required to allow the case to proceed, even if he otherwise satisfies the ninety-day requirement during the pendency of the case. *See In re Rowe*, 182 S.W.3d at 426.

When, however, the record indicates that neither party intends to reside in the county of suit, abating the suit will not result in the residency requirements being met. *See In re Green*, 385 S.W.3d at 670. When "neither party will ever meet the residency requirements, the impediment to the trial court going forward with the suit cannot be removed," and dismissal is the proper remedy. *Id.* "The

29

[s]tatute is mandatory that where neither the plaintiff nor the defendant has the qualifications thereby prescribed, the court may not grant a divorce." *Yeater v. Yeater*, 243 S.W.2d 389, 390–91 (Tex. Civ. App.—El Paso 1951, no writ) (reversing and instructing trial court to dismiss unless party could allege and prove residency sufficient to maintain suit).

## A.    The Fort Bend County Suit for Divorce

Jonathan filed his original divorce petition in Fort Bend County on February 10, 2012, and served Nicolette by publication in May 2012.  The facts concerning the parties' residency are undisputed.  Nicolette and Jonathan were married in Harris County in November 2011 and lived in Harris County with J.A.M. until December 31, 2011, at which time they moved to Fort Bend County.  Jonathan filed his divorce petition in Fort Bend County on February 10, 2012, less than ninety days after the parties had moved to Fort Bend County, one day after Nicolette left the marital residence, and one day before Nicolette moved to Utah with J.A.M.  Thus, because neither Jonathan nor Nicolette had resided in Fort Bend County for the preceding ninety-day period at the time Jonathan filed his divorce petition, Jonathan did not satisfy the mandatory residency requirements of section 6.301.  *See* TEX. FAM. CODE ANN. § 6.301; *In re Green*, 385 S.W.3d at 669.  His pleadings, which certified that he and Nicolette had both resided in Fort Bend County for the preceding ninety days, were, therefore, fraudulent and subject to

dismissal upon challenge by Nicolette. *See Sun Oil Co. (Del.) v. Hall*, 566 S.W.2d 696, 698 (Tex. Civ. App.—Austin 1978, no writ) (holding that case may not be maintained if venue facts are fraudulent when asserted as grounds for dismissal). Jonathan could have requested that the trial court abate the proceedings and then, once he satisfied the residency requirements, he could have filed an amended petition. *See In re Green*, 385 S.W.3d at 670; *Hoffman*, 821 S.W.2d at 6. However, he did not take the affirmative action of filing an amended petition once he had resided in Fort Bend County for ninety days, and, as such, the mandatory requirements for allowing the case to proceed were not met. *See In re Rowe*, 182 S.W.3d at 426; *Whiteman*, 682 S.W.2d at 358. Because they were not met, the Fort Bend County court had no authority to maintain Jonathan's action. *See In re Green*, 385 S.W.3d at 669; *In re Marriage of Lai*, 333 S.W.3d at 648–49.

Nevertheless, instead of dismissing Jonathan's suit, and without ruling on any matters related to that suit, the Fort Bend County court transferred the case sua sponte by docket entry in August 2012 to Harris County, a county in which neither Jonathan nor Nicolette had resided for over eight months. Under the mandatory residency provision set out in Family Code section 6.301, venue was improper in Harris County at the time of transfer. *See* TEX. FAM. CODE ANN. § 6.301. A Texas court has no authority to transfer a case to a county in which venue does not lie. *See In re Rio Grande Valley Gas Co.*, 987 S.W.2d 167, 172, 176 (Tex. App.—

31

Corpus Christi 1999, no writ) (holding that "[a] trial court abuses its discretion when it does not follow guiding rules and principles and reaches an arbitrary and unreasonable decision," that trial court abused its discretion where no basis existed in rules to transfer case that had been dismissed without prejudice prior to transfer, and that transfer order was void).

Had Jonathan challenged the Fort Bend County court's improper transfer of the divorce suit, mandamus relief would have been justified to correct a transfer that was arbitrary and unreasonable and thus constituted an abuse of discretion. *See id.* at 173; *Excel Corp. v. Valdez*, 921 S.W.2d 444, 447–48 (Tex. App.—Corpus Christi 1996, no writ.). However, he let the transfer take place and took no action on his improperly transferred and improperly filed suit.

## B.     The Harris County Suit for Divorce

Jonathan did not file a petition in the Harris County court until he filed his amended petition on January 9, 2013. This filing constituted the filing of a new suit. *See Hoffman*, 821 S.W.2d at 6; *Whiteman*, 682 S.W.2d at 358; *Wilson*, 494 S.W.2d at 612. Moreover, it was a new suit filed in a county in which residency requirements for maintaining a suit for divorce were not and could not be met. *See* TEX. FAM. CODE ANN. § 6.301.

It is undisputed that the parties moved from Harris County on December 31, 2011. It is likewise undisputed that Jonathan had resided in Fort Bend County for

a year when he filed his amended petition in the Harris County court and that he had not resided in Harris County during the ninety-day period immediately preceding the filing of the amended petition. It is similarly undisputed that J.A.M. and Nicolette had resided in Utah for eleven months at the time Jonathan filed his amended petition in Harris County. Thus, Jonathan did not meet section 6.301's mandatory residency requirements either at the time he filed his original petition in Fort Bend County or at the time he filed his amended petition in Harris County. No party had a current connection to Harris County at the time Jonathan filed his amended petition in the Harris County court. Neither party had expressed any intent to move back to Harris County.

When, as here, mandatory residency requirements were not met when Jonathan filed his amended petition in Harris County, and there was no indication that either party intended to reside in Harris County, the residency impediment to the trial court's proceeding with the case in Harris County could not be removed and dismissal was the proper remedy. *See In re Green*, 385 S.W.3d at 670; *In re Marriage of Lai*, 333 S.W.3d at 648; *Yeater*, 243 S.W.2d at 390–91. Moreover, any judgment issued by the Harris County court other than dismissal would ultimately be reversible on appeal. *See In re Green*, 385 S.W.3d at 671; *see also Buffaloe v. Buffaloe*, 210 S.W.2d 429, 430 (Tex. Civ. App.—Dallas 1948, writ

33

dism'd) (holding that divorce decree rendered when residency requirements were not met was voidable).

Nevertheless, the Harris County court denied Nicolette's motion to dismiss, retained the case on its docket, and issued temporary orders, although it was required by law to dismiss the suit for failure of the parties to satisfy the mandatory residency requirements. Thus, the Harris County trial court failed to follow guiding rules and principles and reached an arbitrary and unreasonable decision. *See In re Rio Grande Valley Gas*, 987 S.W.2d at 172.

I would hold that the Harris County court clearly abused its discretion in maintaining Jonathan's suit for divorce on its docket and proceeding to issue "band aid" temporary orders, an initial determination of child custody, and additional orders. *See id.* I would further hold that the Harris County court was and is required to dismiss the underlying case due to Jonathan's failure to satisfy the mandatory residency requirements necessary to maintain a divorce action in Harris County and, for reasons set out below, due to lack of jurisdiction. I would, therefore, sustain Nicolette's first issue.[3]

---

[3]      Jonathan also argues that Nicolette waived her objections concerning venue because she did not file a motion to transfer venue pursuant to Texas Rule of Civil Procedure 86. Jonathan argues solely that Nicolette did not comply with the Texas Rules of Civil Procedure in making her venue complaint, but the Family Code provides the "*exclusive* mechanism for transferring suits affecting the parent-child relationship," and its procedures "were designed to supplant the regular venue rules." *In re Nabors*, 276 S.W.3d 190, 194 (Tex. App.—Houston [14th Dist.]

The majority, however, finding that Jonathan has now met residency requirements in Fort Bend County and that the Texas courts have jurisdiction over the underlying case, transfers the case to that county even though Jonathan never filed an amended petition in that county once he met the mandatory residency requirements and did not protest the improper transfer of his suit from Fort Bend County to Harris County. Moreover, Jonathan's suit for divorce cannot be maintained in Fort Bend County at this time because requirements for that court's jurisdiction over the proceedings under the UCCJEA can no longer be established, as shown below, and any petition he might file would constitute a new suit under Texas law—one filed long after Nicolette filed a competing suit in Utah. *See Whiteman*, 682 S.W.2d at 358; *Wilson*, 494 S.W.2d at 612; *Shankles*, 445 S.W.2d at 805. Nor, as the majority recognizes, can Jonathan's suit be maintained in Harris County. It follows that this Court has jurisdiction to do nothing other than to order the Harris County court, where Jonathan's suit is now pending, to void its orders for the jurisdictional reasons set forth below and to dismiss the suit. Yet the majority takes neither action.

---

2009, orig. proceeding). Likewise, he argues that mandamus does not lie from an incorrect venue determination under section 6.301. However, mandamus relief is available to correct a trial court's failure to dismiss a case when section 6.301's residency requirements are not satisfied. *See In re Green*, 385 S.W.3d 665, 671 (Tex. App.—San Antonio 2012, orig. proceeding).

35

## Subject Matter Jurisdiction and Forum Non Conveniens

In her second and third issues, Nicolette argues that the Texas courts lack personal jurisdiction over her and subject matter jurisdiction over the proceedings filed by Jonathan, that Texas is an inconvenient forum under the UCCJEA, and that the temporary orders, order for capias, and writ of attachment issued by the Harris County court were issued without authority and are void. She argues that the Harris County court's orders must be vacated and Jonathan's suit must be dismissed for lack of subject matter jurisdiction under Family Code sections 152.201 and 152.207. I agree.

The majority, however, treats the petition filed by Jonathan in Fort Bend County without satisfying mandatory residency requirements as the operative petition in this case rather than treating his first amended petition, filed in January 2013 in Harris County, as the initiation of a new suit seeking an initial child custody determination, as required by Texas law. To do this, the majority must ignore the entire body of Texas law that makes it clear that if residency requirements for maintaining a suit for divorce are not met when a divorce petition is filed the suit may be maintained only if the petitioner files a new petition in the county after those requirements are met and that the filing of an amended petition at that time seeking an initial child custody determination constitutes the filing of a new suit. *See Whiteman*, 682 S.W.2d at 358; *Wilson*, 494 S.W.2d at 612; *Shankles*,

445 S.W.2d at 805; *see also Seung Ok Lee*, 198 S.W.3d at 494 (holding that amended petition in divorce proceeding supersedes original petition as basis for determining jurisdiction).

In addition, the majority assumes that jurisdictional requirements under the UCCJEA are met because they would have been met if a petition satisfying mandatory residency and jurisdictional requirements had been filed while Texas still retained jurisdiction under the UCCJEA as the home state of J.A.M.—even though no such petition actually was filed in this case. Indeed, Jonathan has filed *no* valid petition satisfying both mandatory residency requirements necessary for a Texas court to maintain a suit for divorce and jurisdictional requirements for a SAPCR at any point in this litigation. The majority's reading of the jurisdictional requirements is entirely contrary to the Texas and UCCJEA principles governing the filing of suits for an initial child custody determination, is without any support in the law, and, if implemented as the law of this State, will be disastrous for the regulation of interstate child custody disputes.

The problem is aggravated by the majority's ignoring the fact that the Harris County court, although lacking both jurisdiction and venue, nevertheless improperly persuaded a Utah court official to decline jurisdiction over a suit seeking an initial child custody determination that Nicolette had properly filed in Utah and in which Jonathan had appeared and answered. This Court's disposition

37

of this case—asserting the jurisdiction of this Court and the Fort Bend and Harris County courts over the underlying proceedings and transferring the case to Fort Bend County—not only is unsupported by law but invites the protracted, expensive, and duplicative litigation the UCCJEA was enacted to prevent. Therefore, I disagree with the majority's argument and disposition of this case on jurisdictional and forum non conveniens grounds, as well as on residency grounds. I can find no jurisdiction over this case in Texas and no authority of the Harris County court to have issued any orders or to have persuaded the Utah court to decline jurisdiction on forum non conveniens grounds.

I would order the Harris County court to vacate its orders and dismiss the case so that the Utah case can proceed unimpeded by this litigation.

A. **Subject Matter Jurisdiction and Forum Non Conveniens Determinations Under the UCCJEA**

1. *Subject Matter Jurisdiction Under the UCCJEA*

Subject matter jurisdiction in child custody matters is determined by reference to the UCCJEA, set out in Family Code Chapter 152. *See In re Dean*, 393 S.W.3d 741, 746 (Tex. 2012) (orig. proceeding) (stating that section 152.201 provides "exclusive jurisdictional basis" for Texas court to make child custody determination). By adopting the UCCJEA, the legislature sought to avoid the jurisdictional competition and conflict that results when courts in different states determine jurisdiction based on subjective factors. *In re Burk*, 252 S.W.3d 736,

739 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding). The UCCJEA was intended to give prominence to objective factors in determining jurisdiction, and it should be construed in such a way as to strengthen, rather than undermine, the certainty that prioritizing home-state jurisdiction was intended to promote. *Id.*

Family Code section 152.201, governing "Initial Child Custody Jurisdiction" in a suit subject to the UCCJEA, provides in relevant part:

(a) [A] court of this state has jurisdiction to make an initial child custody determination only if:

(1) this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state; [or]

(2) a court of another state does not have jurisdiction under Subdivision (1) or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 152.207 . . . .

TEX. FAM. CODE ANN. § 152.201 (Vernon 2008). An "initial determination" is the "first child custody determination concerning a particular child." *Id.* § 152.102(8) (Vernon 2008). Family Code section 152.102(7) defines "home state" as "the state in which a child lived with a parent . . . for at least six consecutive months immediately before the commencement of a child custody proceeding." *Id.* § 152.102(7). "Commencement" is defined as "the filing of the first pleading in a proceeding." *Id.* § 152.102(5). The purposes behind the UCCJEA suggest that a child's physical location is the central factor to be considered when determining a

child's home state. *In re Burk*, 252 S.W.3d at 739. Under the UCCJEA, a Texas court may decide child custody matters if Texas is the child's "home state"—that is, the state in which the child has lived with a parent for the past six months—on the date of the commencement of the proceeding. TEX. FAM. CODE ANN. § 152.201(a)(1); *Bruneio v. Bruneio*, 890 S.W.2d 150, 153 (Tex. App.—Corpus Christi 1994, no writ) (construing predecessor statute to UCCJEA). Texas does not qualify as a child's home state when the child has not lived in Texas for the six-month period immediately preceding the filing of the action in Texas. *See Koester v. Montgomery*, 886 S.W.2d 432, 435 (Tex. App.—Houston [1st Dist.] 1994, no writ) (applying predecessor statute).

In addition to the subject matter jurisdiction over child-custody proceedings under the UCCJEA as set out in section 152.201, a Texas trial court has jurisdiction to render emergency temporary orders for the protection of a child if (1) the child is physically present in Texas and (2) has been abandoned or "it is necessary in an emergency to protect the child because the child . . . is subjected to or threatened with mistreatment or abuse." *See* TEX. FAM. CODE ANN. § 152.204(a) (Vernon 2008); *Garza v. Harney*, 726 S.W.2d 198, 201 (Tex. App.—Amarillo 1987, no writ) (quoting predecessor to Family Code section 152.204(a)). In such a case, the district court is empowered to act "only on a *short term, temporary, emergency basis*" when the potential for immediate harm exists.

*Garza*, 726 S.W.2d at 202–03 (emphasis in original). The exercise of emergency jurisdiction does not take on the same characteristics as the exercise of jurisdiction under other provisions of the UCCJEA. *Id.* at 203. A Texas trial court does not have jurisdiction to enter a temporary order on emergency grounds for a child who is the subject of a pending custody determination outside of Texas where no evidence indicates the child needs emergency protection. *See id.*

The first substantive question in a child custody dispute in which multiple states are involved is whether the Texas trial court has jurisdiction over the case under section 152.201. *See id.* at 201. A Texas court has jurisdiction to make an initial child custody determination if Texas was the child's home state on the date suit was filed in Texas or if Texas was the child's home state within six months of the date suit was filed in Texas if the child is absent from this state but a parent lives in Texas. TEX. FAM. CODE ANN. § 152.201(a)(1); *In re Burk*, 252 S.W.3d at 740; *see Bruneio*, 890 S.W.2d at 153.

If a question of the existence or exercise of jurisdiction under the UCCJEA is raised in a child custody proceeding, the question, upon request of a party, must be given priority on the court's calendar and handled expeditiously. TEX. FAM. CODE ANN. § 152.107 (Vernon 2008). Subject matter jurisdiction is a fundamental stricture on the power of the court, and a party's voluntary participation in the trial

41

court cannot confer subject matter jurisdiction where it does not otherwise exist. *Abderholden v. Morizot*, 856 S.W.2d 829, 832 (Tex. App.—Austin 1993, no writ).

A trial court's jurisdictional determination is a question of law subject to *de novo* review. *See In re Alanis*, 350 S.W.3d at 324; *In re Burk*, 252 S.W.3d at 739; *Seung Ok Lee*, 198 S.W.3d at 494. The trial court's wrongful assertion of subject matter jurisdiction subjects the case to dismissal. *See In re Wilson*, 799 S.W.2d 773, 775–76 (Tex. App.—Tyler 1990, no writ); *Garza*, 726 S.W.2d at 203; *see also In re Alanis*, 350 S.W.3d at 329 (ordering trial court to withdraw order denying request to decline jurisdiction and to enter order declining jurisdiction).

### 2. *Forum Non Conveniens*

A trial court's jurisdictional determination based on forum non conveniens is reviewed for abuse of discretion. *See In re Alanis*, 350 S.W.3d at 326; *In re Burk*, 252 S.W.3d at 741–42; *Seung Ok Lee*, 198 S.W.3d at 495.

A court that has subject matter jurisdiction pursuant to section 152.201 of the UCCJEA may decline to exercise that jurisdiction if it finds that Texas is an inconvenient forum under section 152.207. Section 152.207 provides, in relevant part:

> (a) A court of this state which has jurisdiction under this chapter to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may

be raised upon motion of a party, the court's own motion, or request of another court.

(b) Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:

(1) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(2) the length of time the child has resided outside this state;

(3) the distance between the court in this state and the court in the state that would assume jurisdiction;

(4) The relative financial circumstances of the parties;

(5) Any agreement of the parties as to which state should assume jurisdiction;

(6) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

(7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

(8) The familiarity of the court of each state with the facts and issues in the pending litigation.

TEX. FAM. CODE ANN. § 152.207(a), (b) (Vernon 2008).

When determining if it will decline its jurisdiction based on section 152.207, a Texas court may communicate with a court in another state concerning a proceeding arising under the UCCJEA. TEX. FAM. CODE ANN. § 152.110(b) (Vernon 2008). The court may allow the parties to participate in the communication, and if they are not able to participate in the communication, "they

43

must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made." *Id.* § 152.110(c). "For this purpose, the court *shall* allow the parties to submit information and *shall* consider all relevant factors . . . ." *Id.* § 152.207(b) (emphasis added). These factors include evidence as to whether domestic violence has occurred or is likely to continue; which state can best protect the parties and the child; the length of time the child had resided outside Texas; the distance between the courts; and the relative financial circumstances of the parties. *See id.*

If proceedings are pending simultaneously in this state and in another state, the Texas court is required to inform the other court of the simultaneous proceedings and "shall request that the other court hold the proceeding in that court in abeyance until the court in this state conducts a hearing to determine whether the court has jurisdiction over the proceeding." *Id.* § 152.110(d). Except for communication between courts on schedules, calendars, court records, and similar matters, "a record must be made of any communication under [section 152.110]" and "[t]he parties must be informed promptly of the communication and granted access to the record." *Id.* § 152.110(e)–(f).

An order of an out-of-state court declining to exercise jurisdiction over a child custody dispute is void, and the Texas court is without jurisdiction to hear and determine the dispute, when the out-of-state order amounts to nothing more

44

than an agreement between an out-of-state judge and a Texas judge, unsupported by any real evidence submitted during the course of a custody proceeding in the out-of-state court. *See In re Wilson*, 799 S.W.2d at 775. Thus, an out-of-state order does not decline to exercise jurisdiction and thereby confer jurisdiction on the Texas courts when the record on appeal does not contain findings or an order from the out-of-state court and when there is no evidence that the out-of-state court held a hearing on the question of jurisdiction, but, instead, the record indicates, at best, an agreement between judges concerning jurisdiction. *Abderholden*, 856 S.W.2d at 835–36. In such a case, the out-of-state order does not constitute a proper order declining jurisdiction and is insufficient to provide the Texas court with jurisdiction. *Id.*; *In re Wilson*, 799 S.W.2d at 775.

### 3. *Personal Jurisdiction, Conservatorship Orders, Emergency Orders, and Writs of Capias*

Once the subject matter jurisdiction provisions of the Family Code have been satisfied, the court can properly exercise personal jurisdiction over a non-resident defendant with respect to custody matters. *See In re S.A.V.*, 837 S.W.2d 80, 84 (Tex. 1992); *Lemley v. Miller*, 932 S.W.2d 284, 285 (Tex. App.—Austin 1996, no writ). However, before a trial court may order a non-resident parent to pay money, such as child support, a long-arm statute must authorize the exercise of personal jurisdiction over the parent, and the exercise of personal jurisdiction must be consistent with federal and state constitutional guarantees of due process. *In re*

45

*S.A.V.*, 837 S.W.2d at 85. Moreover, a court may not render an order for temporary conservatorship of a child, for temporary support of a child, or for payment of attorney's fees and expenses without notice and a hearing, unless the order is an emergency order sought by a governmental entity. *See* TEX. FAM. CODE ANN. § 105.001(a)–(b), (h) (Vernon 2008). Further, the court may not render an order attaching the body of a child, taking a child into the possession of a person designated by court, or excluding a parent from possession of or access to a child except on a verified pleading or affidavit in accordance with the Texas Rules of Civil Procedure. *See id.* § 105.001(c).

## B. The Harris County Court's Rulings and Orders

### 1. Jonathan's Amended Petition and the January 24, 2013 Hearing on Nicolette's Special Appearance and Motion to Dismiss

Jonathan filed his amended petition in the Harris County court on January 9, 2013, seeking to be named joint managing conservator of J.A.M. with the exclusive right to designate J.A.M.'s primary residence. The filing of this amended petition seeking an initial child custody determination constituted the filing of a new suit. *See Seung Ok Lee*, 198 S.W.3d at 494; *Whiteman*, 682 S.W.2d at 358; *Wilson*, 494 S.W.2d at 612. The petition falsely recited that Jonathan had been "a resident of this county for the preceding ninety-day period" and requested service on Nicolette in Utah under Texas's long-arm statute. It failed to state that

46

J.A.M. had resided in Utah for the previous eleven months and was the subject of ongoing divorce and custody proceedings in Utah in which Jonathan had appeared.

At the time Jonathan filed his amended petition in Harris County seeking an initial child custody determination, neither the mandatory residency requirements for maintenance of a suit for divorce nor the jurisdictional requirements under the UCCJEA governing initial child custody determinations could be satisfied. No party resided in Harris County and none had expressed the intention to return to live in Harris County. Rather, Nicolette had established residency and a new home state for J.A.M. in Utah, and she had initiated divorce and custody proceedings seeking sole custody of J.A.M. and other orders in a court of proper jurisdiction in Utah on September 5, 2012. *See* TEX. FAM. CODE ANN. § 152.102(7) (defining "home state" as "state in which a child has lived with a parent . . . for at least six consecutive months immediately before the commencement of a child custody proceeding"). Jonathan had resided in Fort Bend County for more than a year and had been served and had appeared in the Utah proceedings; he had taken no steps to file his divorce petition or to seek an initial child custody determination in a Texas court with both jurisdiction and venue over the proceedings.

On January 15, 2013, four days after Jonathan improperly filed his amended petition in the Harris County court, Nicolette filed a motion for temporary relief in the Utah court seeking to establish exclusive jurisdiction over the SAPCR and

47

divorce proceedings in Utah. She set the motion for hearing on February 1 and sent notice Jonathan's Utah counsel. On January 24, 2013, the day of the hearing Jonathan had scheduled on his request for initial temporary orders in the Harris County court, Nicolette filed in that court an amended special appearance and motion to dismiss Jonathan's suit.

The Harris County court held the previously scheduled hearing on January 24, 2013. Despite being put on notice that neither party resided in Harris County or intended to reside there and that Nicolette had moved to Utah with J.A.M. eleven months before Jonathan filed his improper petition in Harris County seeking a divorce and initial child custody determination, the court heard Nicolette's special appearance and motion to dismiss but did not rule on its jurisdiction. Rather, it announced its intention to enter temporary orders concerning J.A.M. and to confer with the Utah court on Nicolette's claim that Texas was an inconvenient forum for the child custody proceedings.

As of the date of the Harris County court's January 24, 2013 hearing on Nicolette's special appearance and motion to dismiss, the Utah court had not declined jurisdiction, and Nicolette's motion to establish exclusive jurisdiction in Utah was awaiting a hearing scheduled for February 1, 2013. Thus, on the date of the January 24, 2013 hearing, *none* of the criteria for establishing either residency or subject matter jurisdiction over Jonathan's suit for divorce and child custody in

the Harris County court were met. *See id.* § 152.201(a) (providing situations in which Texas court has jurisdiction to make initial child custody determination, including if "this state is the home state of the child on the date of the commencement of the proceeding" or court of another state "has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 152.207"); *id.* § 152.102(7) (defining "home state"). Nevertheless, the Harris County court refused to make the requested preliminary residency and jurisdictional determinations at that time, arbitrarily and capriciously maintained the case on its docket, entered sua sponte orders it termed "band aid" orders, and delayed further rulings until it could communicate with the Utah court.

As any communication with the Utah court could not have established that the Harris County court could maintain the suit under Family Code section 6.301 or that the Harris County court had jurisdiction to make an initial child custody determination under Family Code section 152.201, the Harris County court's refusal to rule on Nicolette's residency and jurisdictional motions and to dismiss the case—subject to any actual finding of an emergency requiring the Harris County court's exercise of temporary *emergency* jurisdiction over J.A.M., *had he been in Texas*, which the evidence indicates he was not—was an abuse of discretion. *See id.* § 152.201(a)(1); *id.* § 152.204(a) (providing for emergency jurisdiction when child is physically present in Texas and "it is necessary in an

49

emergency to protect the child because the child . . . is subjected to or threatened with mistreatment or abuse"); *Garza*, 726 S.W.2d at 201 (construing predecessor to section 152.204).

The Harris County court should have dismissed the case for lack of subject matter jurisdiction. By failing to do so, it acted without reference to any guiding rules or principles, and its rulings were arbitrary and capricious. *See In re Burk*, 252 S.W.3d at 739; *Seung Ok Lee*, 198 S.W.3d at 494–95; *In re Wilson*, 799 S.W.2d at 775; *Garza*, 726 S.W.2d at 202–03.

## 2. *The January 25, 2013 "Band Aid" Orders*

Instead of dismissing the case following the January 24, 2013 hearing on Nicolette's special appearance and motion to dismiss, the Harris County court proceeded to entertain an oral request for temporary orders made at the hearing by Jonathan's counsel. The court determined, without hearing argument or evidence on that request, that it had jurisdiction "to sua sponte, issue temporary orders in the best interest of this child and that's exactly what I'm going to do." The court immediately awarded Jonathan temporary custody of J.A.M. and ordered that he take physical possession of J.A.M. "right now" and have "the next two weeks with this child."

Even had J.A.M. been present in Texas on the date of the Harris County court's decision to enter temporary emergency orders sua sponte on January 24,

2013, the jurisdictional requirements for entering such orders still would not have been satisfied. *See* TEX. FAM. CODE ANN. § 152.204(a); *Garza*, 726 S.W.2d at 201. Neither party presented any evidence of immediate harm to J.A.M. To the contrary, Nicolette testified that she had left Jonathan after only three months of marriage to go to a women's shelter and then home to Utah to live with her parents and that they had attempted to reach an agreement, but she ultimately asked him to stop calling her because of his use of vulgar language. The Harris County court ignored this evidence in rendering its "band aid" orders.

In addition, J.A.M., who was residing in Utah, was the subject of a pending custody determination outside of Texas, as the Harris County court knew; and a Texas court does not have jurisdiction to enter a temporary order on emergency grounds for a child who is the subject of a pending custody determination outside of Texas when, as here, no evidence indicates the child needs emergency protection and the child is not present in Texas. *See* TEX. FAM. CODE ANN. § 152.204(a); *Garza*, 726 S.W.2d at 201.

The Harris County court also ignored the evidence that the mandatory residency requirements under section 6.301 and the jurisdictional requirements under section 152.201 had not been met, and it did not inquire into any of the factors relevant to the determination of an inconvenient forum under section 152.207. *See* TEX. FAM. CODE ANN. § 152.201(a); *id.* 152.207(b) (listing factors

relevant to determination of inconvenient forum upon which court "shall allow the parties to submit information and shall consider all relevant factors").

Instead, the Harris County court issued oral orders sua sponte ordering that Jonathan take physical possession of J.A.M. "right now" and that Jonathan have "the next two weeks with this child." No such request had been made by Jonathan, either orally or in writing, and Jonathan did not present any evidence of an emergency or an immediate threat to J.A.M. The Harris County court's oral orders also included an unspecified "standard set of injunctions" to include "things, like not hiding or secreting the child away, not calling each other repetitively or making kind of unlawful threats to anybody, these types of things."

The next day, January 25, 2013, the Harris County court signed a form of order filed by Jonathan's counsel memorializing its January 24 oral "band aid" orders. The written and signed "band aid" orders ordered Nicolette to turn J.A.M. over to Jonathan at 6:00 p.m. that same day in Utah, ordered her to pick J.A.M. up at Jonathan's Fort Bend County residence at 8:00 p.m. on February 8, 2013, and ordered her to appear for a status conference in the Harris County court on February 7, 2013. These details were not included in the previous day's oral orders.

There is no indication in the mandamus record that the form of order filed by Jonathan's counsel and signed by the Harris County court on January 25, 2013,

was served on Nicolette or on her Texas or Utah counsel at the time it was executed. Nor was the Harris County court able to confirm from its own files or from its conference with Jonathan's counsel at the court's next hearing on February 7, 2013, that Nicolette had been aware of the January 25 written "band aid" orders before the February 7, 2013 hearing.

All of these actions of the Harris County court were taken even though Jonathan had not established that the court had the power to maintain the case in light of section 6.301 or that the court had subject matter jurisdiction over the case pursuant to the UCCJEA, and these actions were taken in violation of the hearing and notice provisions in the Family Code, including sections 105.001, 152.201, 152.204, and 152.207. *See* TEX. FAM. CODE ANN. § 105.001(a)–(c) & (h) (governing notice and hearing); *id.* § 152.201 (governing jurisdiction to make initial child custody determination); *id.* § 152.204 (governing temporary emergency jurisdiction); *id.* § 152.207 (governing determination of forum non conveniens). Nevertheless, Nicolette's failure to abide by the provision of the Harris County court's January 25, 2013 order requiring her to turn over possession of J.A.M. to Jonathan at 6:00 p.m. in Utah the same day the Harris County court issued its order in Texas in her absence served as the basis for Jonathan's motion to enforce the "band aid" orders filed on January 28, 2013—immediately after his trip

to Utah on January 25, 2013—and as a basis for the court's subsequent orders for the arrest of Nicolette and the immediate seizure of J.A.M. in Utah.

I would hold that the Harris County court was without jurisdiction to enter its "band aid" temporary possession orders, that its actions were arbitrary and capricious, and that its orders are void. *See Garza*, 726 S.W.3d at 201–02.

### 3. *The Utah Commissioner's Order Declining Jurisdiction*

On February 6, 2013, the Harris County court faxed a letter to the parties informing them that it had denied Nicolette's special appearance and motion to dismiss. Attached to the fax was an order signed by a Utah court commissioner declining jurisdiction over the divorce and child custody proceedings filed by Nicolette in Utah.

The Harris County court's February 6, 2013 fax revealed that that court had conferred with the Utah commissioner without following section 152.110's requirements that a court in which a determination of forum non conveniens is sought may communicate with a court in another state concerning the proceeding, but must either allow the parties to participate in the conversation or give them "the opportunity to present facts and legal arguments before a decision on jurisdiction is made." *See* TEX. FAM. CODE ANN. § 152.110(b)–(c). Nor did the Harris County court keep any record of its communications with the Utah commissioner, in violation of section 152.110(f). *See id.* § 152.110(e)–(f). Nor

54

did it inform the parties promptly of the communication when it took place on January 31, 2013, a day before Nicolette's scheduled hearing in Utah on her motion for temporary orders. *See id.* § 152.110(f). Nor did it grant the parties access to the record of that conversation, as required by sections 152.110(e) and (f). *See id.* § 152.110(e)–(f). Furthermore, there is no evidence that before obtaining the Utah commissioner's order declining jurisdiction the Harris County court considered the statutory factors relevant to a forum non conveniens determination in any way.

Specifically, there is no evidence that the Harris County court took evidence on or considered the following:

(1) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(2) the length of time the child has resided outside this state;

(3) the distance between the court in this state and the court in the state that would assume jurisdiction;

(4) the relative financial circumstances of the parties;

(5) any agreement of the parties as to which state should assume jurisdiction;

(6) the nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

(7) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

(8) the familiarity of the court of each state with the facts and issues in the pending litigation.

*See id.* § 152.207.

At the Harris County court's February 7, 2013 hearing, Nicolette's special appearance counsel informed the court that it was his understanding that the Harris County court had not conferred with the proper authority in Utah with the power to decide jurisdiction under the UCCJEA, that the Utah commissioner's decision was under appeal, and that Nicolette was entitled to a trial de novo of that decision in Utah. Nevertheless, the Harris County court announced its decision to assert its own jurisdiction over the proceedings apart from any decision of the Utah courts, saying, "[A]t this particular time, based on my conversation and not what Utah decided, but rather what I heard in this court, this court has invoked jurisdiction of this case." The Harris County court's invocation of jurisdiction violated not only sections 152.201 and 152.207 but also sections 152.110(c) and 152.110(d), setting out the notice and hearing requirements for forum non conveniens determinations.

I would hold that that the Harris County court's communications with the Utah court, a court of proper jurisdiction in which Nicolette's divorce and SAPCR were pending, violated the requirements of the UCCJEA governing communications between courts regarding forum non conveniens determinations and the rights of the parties to be informed of the communications and to present argument and evidence. The Harris County court's assertion and exercise of

jurisdiction over this suit also violated the forum non conveniens provisions of section 152.207.

I further conclude that the order of the Utah commissioner declining to exercise jurisdiction over the properly-filed child custody dispute in Utah amounts to nothing more than an agreement between the commissioner and the Harris County court and is unsupported by any real evidence submitted during the course of a custody proceeding, as required by statute. *See Abderholden*, 856 S.W.2d at 835–36; *In re Wilson*, 799 S.W.2d at 775.

I would hold that, in these circumstances, the Harris County trial court's assertion of exclusive jurisdiction over the divorce and child custody proceedings was made without any reference to guiding rules or principles and constituted an abuse of discretion. The Harris County court should have dismissed the case for lack of subject matter jurisdiction. By failing to do so, its rulings were arbitrary and capricious. *See In re Burk*, 252 S.W.3d at 739; *Seung Ok Lee*, 198 S.W.3d at 494–95; *In re Wilson*, 799 S.W.2d at 775; *Garza*, 726 S.W.2d at 202–03.

### 4. *The February 7, 2013 Hearing on Custody and the February 14 "Temporary Orders (Default)"*

After Nicolette's counsel informed the Harris County court at its February 7, 2013 "status hearing" that he had been hired to represent Nicolette only on her special appearance in Texas, the court excused him and proceeded ex parte to hear Jonathan's request for further temporary orders, even though the court was unable

57

to confirm from its own records or from Jonathan's counsel that Nicolette had had notice of the orders or the hearing.

Without hearing any evidence other than Jonathan's statements that he had flown to Utah and Nicolette would not speak to him and had not turned J.A.M. over to him, the Harris County court named Jonathan temporary sole managing conservator of J.A.M. without having any pleadings on file seeking such relief. Finding, again sua sponte, that there was a threat that Nicolette would remove J.A.M. from Texas and "hide and secrete the child from the Court and the father," the Harris County court ordered Nicolette to have access to J.A.M. only through the SAFE supervised visitation program in Harris County, a county without any connection to the proceedings, to appear for intake at a specified time, and to pay interim child support.

I conclude that all of these orders were made without jurisdiction, without regard to whether Nicolette had notice, without taking evidence regarding Jonathan's fitness as a parent, Nicolette's finances and living conditions, J.A.M.'s care, protection, training, personal relationships, or the availability of evidence in this state, other than the physical presence of Jonathan in this state, and in violation of controlling statutes. *See* TEX. FAM. CODE ANN. §§ 105.001; 152.201; 152.204; 152.207.

The Harris County court memorialized its orders of February 7, 2013, by signing a form of order titled "Temporary Orders (Default)" filed by Jonathan's counsel on February 14, 2013. The twenty-six-page order imposed numerous burdens on Nicolette, including an order that she pay child support to Jonathan in a specified amount. The only evidence in the record that the detailed terms of the Harris County trial court's February 14, 2013 "Temporary Orders (Default)" was brought to the attention of Nicolette or her Texas or Utah counsel is a fax of the order from the Harris County court to Nicolette's Texas attorney on March 13, 2013. There is also a one-page document in the record titled "Corrected Temporary Orders (Default)," filed February 14, 2013, which recites that, on February 7, 2013, following the dismissal of Nicolette's Texas counsel from the hearing, "[t]he Court proceeded by default."

I would hold that the Harris County court's "Temporary Orders (Default)," executed on February 14, 2013, were entered without jurisdiction, were made without reference to any guiding rules and principles, constituted an abuse of the Harris County court's discretion, and must be vacated. *See In re Wilson*, 799 S.W.2d at 775; *Garza*, 726 S.W.2d at 202–03.

### 5. *The February 28 Ex Parte Contempt Proceedings, Capias Order, and Writ of Attachment*

On January 28, 2013, Jonathan moved the Harris County court to hold Nicolette in contempt of court for failing to surrender J.A.M. to him in Utah at

6:00 p.m. on January 25, 2013, in response to the Harris County court's "band aid" orders issued earlier that same day. After another ex parte hearing, held on February 28, 2013, the trial court issued a writ of attachment, commanding any sheriff or constable to deliver J.A.M. to Jonathan and ordering Jonathan to present J.A.M. before the court for a hearing "to determine the right to possession of the child." The court simultaneously issued an order for capias for Nicolette's arrest due to her failure to provide J.A.M. to Jonathan for his court-ordered possession pursuant to the court's temporary orders. There is no indication that Nicolette received notice of these proceedings, and the Harris County court's records reflect its acknowledgement that, after Nicolette's Texas counsel asked to be excused during the February 7 hearing, the Harris County court "proceeded by default."

I would hold that the Harris County court's finding of contempt and its order of capias and writ of attachment were all made arbitrarily and capriciously, and without reference to any guiding rules or principles, and that the court lacked jurisdiction to enter them. I would further hold that all of the Harris County court's orders in the underlying divorce and child custody proceedings are void. *See Garza*, 726 S.W.2d at 202–03. Because I conclude that Texas courts lack subject matter jurisdiction over this case and that all of the Harris County court's temporary orders are void, I would not transfer this case to Fort Bend County, and

I would not abate this mandamus proceeding to allow the Fort Bend County court to consider the challenged temporary orders.

I would sustain Nicolette's second and third issues.

## Tolling of the Statute of Limitations

Finally, Jonathan argues that the "statute of limitations" on his suit for divorce and SAPCR should be tolled to the date of the filing of his Fort Bend County petition, and, therefore, J.A.M.'s home state should be determined as of the date Jonathan filed his original petition in Fort Bend County instead of the date he filed his amended petition in Harris County. This argument is without merit. Statutes of limitation are remedial only and are enacted to restrict the period within which a right, otherwise unlimited, may be asserted. *Amarillo Indep. Sch. Dist. v. Brockmeyer*, 292 S.W.2d 886, 887 (Tex. Civ. App.—Amarillo 1956, no writ).

There is no period within which a right to divorce or to seek an initial child custody determination must be asserted or is lost. Therefore, there is no statute of limitations on filing a suit for divorce or a suit seeking an initial child custody determination. And Jonathan had no right at any time to file and maintain his suit for divorce in a county in which the residency requirements were not established and no proper petition was ever filed. Nor did he have the right to file a petition seeking an initial child custody determination in Harris County after J.A.M. had established a home state in Utah, proper proceedings had been filed in Utah, and

61

Jonathan had answered and appeared in Utah. To date, Jonathan has never filed a suit that can be maintained in the Texas courts, either in Fort Bend County or in Harris County, and any petition that might be filed hereafter would constitute the initiation of a new suit that the courts of this state lack jurisdiction to entertain.

There is, at this time, no Texas county in which jurisdiction over the child custody proceedings at issue in this case can be established. Nor can jurisdiction be conferred by agreement of the parties or of courts. *See Abderholden*, 856 S.W.2d at 832. Moreover, there is no evidence that Texas is a proper forum for this dispute, while it is undisputed that Utah has jurisdiction over Nicolette's suit and is a proper venue. Allowing Texas residents to ignore mandatory venue provisions and jurisdictional requirements on the ground that they *could* have been satisfied at one time *if* the resident had taken the actions necessary to invoke the venue of a proper court while Texas had jurisdiction over the child and SAPCR would nullify Texas's mandatory venue and jurisdictional requirements. It would also nullify Texas's strong public policy of avoiding jurisdictional conflict in child custody proceedings and assuring that Texas is a proper forum for maintaining a child custody dispute before it asserts jurisdiction. *See In re Burk*, 252 S.W.3d at 739.

I conclude that Jonathan's tolling argument is without merit.

## Conclusion

I would conditionally grant Nicolette's petition for writ of mandamus. I would vacate all orders entered by the Harris County court and direct the court to dismiss the suit.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Bland.

Justice Keyes, dissenting.